GEORGE G. MANNING et al., Respondents, *v.* LOUIS P. BECK et al., Appellants.

The provision of the General Assignment Act (Chap. 466, Laws of 1877 as amended by chap. 328, Laws of 1884, chap. 283, Laws of 1886 and chap. 503, Laws of 1887) invalidating preferences in an assignment for the benefit of creditors except to the amount of one-third the net value of the assigned estate, was not intended to and does not prevent a creditor from obtaining payment of, or security and thereby a preference for, his debt even from an insolvent debtor, and while *it seems*, if he accepts such a security with knowledge that the debtor intends to make an assignment, that the security was executed in contemplation thereof, and that it will result in a violation of the provision of the act, the security will be void; if the creditor accepts it in ignorance of any such existing intent on the part of the debtor, the provision does not apply, and the security is not rendered invalid by the fact that the debtor does thereafter execute an assignment.

*Berger* v. *Varrelmann* (127 N. Y. 281), distinguished and limited.
*White* v. *Cotzhausen* (129 U. S. 329), distinguished.

(Argued October 6, 1891; decided December 1, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made on the first Tuesday of January, 1891, which affirmed a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term.

The plaintiffs in this action were, at the time of the commencement thereof, judgment creditors of the defendant Louis P. Beck, and they brought the action against him, and William H. Beck and H. Israel Weinberg, for the purpose of setting aside a bill of sale executed by Louis P., to William H. Beck, and an assignment without preferences for the benefit of creditors, executed by Louis P. Beck to the defendant H. Israel Weinberg. The complaint alleged that the bill of sale and the assignment were executed for the purpose of hindering, delaying and defrauding the creditors of the defendant Louis P. Beck, and it set forth various facts supporting, as the plaintiffs alleged, that statement. The complaint also alleged that the making of the bill of sale by Louis P., and its delivery to the defendant William H. Beck, and the making of the general assignment to the defendant Weinberg, were all parts of one transaction, and that such papers were executed in order to avoid the statute forbidding the preferring of creditors in a general assignment to an extent greater than one-third of the assets of the person making the same. The plaintiffs demanded judgment that the assignment to the defendant Weinberg should be adjudged fraudulent and set aside; also that the bill of sale should be adjudged fraudulent as against these plaintiffs, and that the defendant William H. Beck should be directed to transfer and deliver the property mentioned in the bill of sale, or so much thereof as might remain in his hands at the commencement of this action, to a receiver to be appointed by the court, and that he should in the meantime be enjoined from disposing of, or meddling or interfering with, such property; also that the defendant William H. Beck should be directed to account for and deliver to the receiver the proceeds of the sale of any property which had been or might thereafter be made by him; also that the defendant Weinberg should be directed and required to account for and transfer to the receiver all the property which had already or which might thereafter come into his hands as such assignee, and that the receiver should, after paying out of the fund so coming into his hands his law-

ful commissions and expenses, dispose of the same in payment
of these plaintiffs' judgments, and that such judgments should
be declared a lien superior to all other claims upon the funds
and property coming into the hands of such receiver.

The defendants by their answer denied all allegations of
fraud and also any intention to hinder, delay or defraud the
creditors of Louis P. Beck, and also denied various other of
the allegations in the complaint.

Upon motion at Special Term, a receiver of the defendant
Louis P. Beck was appointed to take possession of and hold
all the estate, debts, property, equitable interests and things in
action of the defendant Louis P. Beck, transferred to the
defendant William H. Beck, or to the defendant H. Israel
Weinberg, by the general assignment already referred to. The
receiver was directed to hold such property pending this action.
The action was tried before one of the justices of the Supreme
Court sitting in equity, and judgment was thereupon ordered
for the plaintiffs and a decree was entered setting aside the
bill of sale from Louis P. Beck to the defendant William H.
Beck, and also the general assignment from Louis P. Beck to
the defendant Weinberg, as fraudulent and void as to these
plaintiffs. It was further decreed that the defendant William
H. Beck should account for and deliver to the receiver appointed
in the action all the property transferred to him by the bill of
sale, as well as the proceeds of all sales of such property, or
any part thereof, as might have been made by him, and that
he should account for all the property sold by him before the
appointment of the receiver, to the full value thereof. It was
further decreed that the defendant Weinberg should account
for and turn over to the receiver all the property which passed
to him by the assignment; that the several judgments so recov-
ered by these plaintiffs against Louis P. Beck were and each
of them was a lien superior to all other claims upon the funds
and property coming into the hands of the receiver; that the
receiver should, after paying his lawful commissions and
expenses, pay to the plaintiffs in this action, respectively, the
amounts of their several judgments, with interest upon each

from the time of recovering the same; and within thirty days from the entering of the judgment, the receiver was directed to make and render an account, and distribute the funds in his hands in accordance with the judgment herein. It was further adjudged that the plaintiffs should recover of the defendants Beck their costs of the action.

Upon the trial, the court found, among other things, these facts, viz.: That defendant William H. Beck is a son of Louis P. Beck, and on the 3d of January, 1889, the father was indebted to the son to the extent of nearly $5,000. The father was the owner of a stock of goods in a store and of the fixtures therein, and on the above-mentioned day he conveyed them all to his son by a bill of sale. The consideration for the execution of such bill was an agreement of the son to take the goods described in it as payment of the debt due him and his assumption of certain indebtedness of the father, which he agreed to pay, and the payment of a small amount in cash to the father. The son was entirely solvent and able to pay the debts which he assumed. There was no question but that the consideration for the bill of sale fully equalled the value of the goods and fixtures which passed under it.

At the time of the execution of the bill of sale, the son had not the slightest knowledge that the father intended to make a general assignment for the benefit of creditors. Weinberg, the assignee, received certain notes from the father, but at that time did not know that he contemplated making an assignment, and the assignee was at all times ignorant of any fraudulent intent on the part of the father.

The assignment for the benefit of creditors was made by Louis P. Beck to the defendant Weinberg on the 4th day of January, 1889, in the afternoon, and the assignee duly accepted the trust and executed a bond for the faithful discharge of his duties, and the first knowledge William H. Beck had of the making of the assignment was on the morning of the 5th of January, 1889, when he was informed of the fact by the assignee.

At the time of the making of the bill of sale, the defendant

William H. Beck knew that Louis P. Beck was insolvent. The findings of the court in relation to the intent of the father, which accompanied the execution of the bill of sale and the assignment, are particularly set forth in the opinion.

There is no finding that Louis P. Beck executed the bill of sale in contemplation of making an assignment for the benefit of his creditors.

Other facts are set forth in the opinion.

*George F. Danforth* for appellants.    The court erred in its construction of the statute relating to general assignments. (Laws of 1877, chap. 466; Laws of 1887, chap. 503; *United States* v. *McClennan,* 3 Summ. 346; *Coates* v. *Donnell,* 94 N. Y. 178; *Williams* v. *Whedon,* 109 id. 337; *Bank* v. *Williams,* 38 N. Y. S. R. 836; U. S. R. S. § 5128; Laws of 1801, chap. 131; Laws of 1811, chaps. 123, 248; Laws of 1812, chaps. 8, 14; 2 R. S. art. 3, § 24; Laws of 1867, chap. 860; Laws of 1870, chap. 92; Laws of 1874, chap. 600; Laws of 1884, chap. 328; Laws of 1886, chap. 283; *Varnum* v. *Hart,* 119 N. Y. 105; *Fitzgerald* v. *Terann,* 109 id. 441; *Dean* v. *M. E. R. Co.,* 119 id. 547; *Ireland* v. *Rathbone,* 39 id. 369; *R. W. Co.* v. *Fielding,* 101 id. 504; *Brown* v. *Guthrie,* 110 id. 435.) The learned court couples the assignment and the bill of sale together, and says each is a part of one transaction and an evasion of the statute in relation to assignments.    This is erroneous.    (*Edwards* v. *Hall,* 6 DeG., M. & G. 89; *Alexander* v. *Brame,* 7 id. 539; *Jeffries* v. *Alexander,* 8 H. L. Cas. 646; *United States* v. *McLennan,* 3 Summ. 345; *Lampson* v. *Arnold,* 19 Iowa, 479; *Van Patten* v. *Burr,* 52 id. 518.) The judgment sets aside the sale and the assignment as an evasion or fraud upon the statute.    The statute simply reduces the preferences and then distributes the estate according to the directions of the assignor in his assignment.    No other consequences can follow.    (*Rex* v. *Birmingham,* 8 B. H. 29; *White* v. *Cotzhausen,* 129 U. S. 329.)    The action will not lie in favor of the plaintiffs as judgment creditors.    (*Spring* v. *Short,* 90 N. Y. 538; *Lidenburgh* v. *Herdtfelder,* 103 id.

304; *Crown* v. *Frothingham*, 97 id. 105.) The words of a statute are to be taken in their natural and ordinary signification, and read according to the obvious import of the language without resorting to subtle and forced interpretation for the purpose of either limiting or extending their operation. (Witherford on Statutes, 54; *U. S.* v. *McClennan*, 3 Sumn. 346; *Bouchard* v. *Dias*, 1 N. Y. 201; *Weber* v. *Mick*, 131 Ill. 520; *Schroeder* v. *Walsh*, 120 id. 403.) The case of *Berger* v. *Varrelmann* (127 N. Y. 281) does not require a different construction in this case than that sanctioned by the very words of the statute. (U. S. R. S. §§ 5021, 5110; Code Civ. Pro. § 2173; *Starin* v. *Kelly*, 88 N. Y. 418; *Zoeller* v. *Riley*, 100 id. 108; 2 R. S. 137, § 5.) The judgment appealed from was given and has been sustained so far, upon the erroneous ground that the transaction of sale by John P. Beck to William Beck was an evasion of the statute. (*Smale* v. *Burr*, L. R. [8 C. P.] 64; *Ramsden* v. *Lupton*, L. R. [9 Q. B.] 17; *Jeffries* v. *Alexander*, 8 H. L. Cas. 646; *Tiemeyer* v. *Turnquish*, 85 N. Y. 522; *Knapp* v. *McGowan*, 96 id. 86, 87.)

*Edward F. Wellington* for respondents. The attempt on the part of the defendants to dispose of substantially the whole estate of Louis P. Beck among creditors whom he wished to prefer in the distribution of his assets, so that the illegal preferences would not abate, as provided for in chapter 503 of the Laws of 1887, was a fraud upon the statute, and a fraud upon these plaintiffs whom they sought by indirection and management to deprive of its protection. (*Manning* v. *Beck*, 54 Hun, 102; 35 N. Y. S. R. 978; *Berger* v. *Varrelman*, 38 id. 813; *White* v. *Cotzhausen*, 129 U. S. 302; *Spellman* v. *Freedman*, 54 Hun, 410; *Davis* v. *Harrington*, 8 N. Y. Supp. 218; *Wilcox* v. *Payne*, Id. 407; *I. W. Co.* v. *Payne*, 11 id. 408.) The assignment and bill of sale must be construed as one instrument and transaction. (*Loos* v. *Wilkinson*, 110 N. Y. 195, 209; *Sweetzer* v. *Smith*, 20 N. Y. S. R. 62; *Southard* v. *Benner*, 72 N. Y. 424, 427; *Berger* v. *Varrelmann*, 38 N. Y. S. R. 813; *F. N. Bank* v. *Bard*, 13 N. Y. Supp. 691.)

The bill of sale cannot stand upon the sole ground that William was a purchaser for value. ( *Union Bank* v. *Warner,* 12 Hun, 306–308 ; *Wood* v. *Hunt,* 38 Barb. 302 ; *Briggs* v. *Merrill,* 58 id. 400 ; *Fullerton* v. *Vail,* 42 How. Pr. 294 ; *Jewett* v. *Noteware,* 30 Hun, 194 ; *Billings* v. *Billings,* 31 id. 67.)

PECKHAM, J. By chapter 503 of the laws of this state, passed in 1887, it was enacted that " In all general assignments of the estates of debtors for the benefit of creditors hereafter made, any preference created therein ——— shall not be valid except to the amount of one-third in value of the assigned estate left after deducting ——— the costs and expenses of executing such trust ; and should one-third of the assets of the assignor be insufficient to pay in full the preferred claims to which, under the provisions of this section, the same are applicable, then the said assets shall be applied to the payment of the same *pro rata* to the amount of said preferred claims."

The provisions of this act have been under review in the second division of this court in the case of *Berger* v. *Varrelmann* (127 N. Y. 281), and whatever has been therein decided we regard as conclusive upon us to the same extent as if decided by us. That action was brought by judgment creditors of the assignor, to set aside a judgment entered against them by confession as in fraud of an assignment by them executed immediately after the confession of such judgment, and to recover for the benefit of the estate of the assignors the amount realized on the sale under the judgment. The ground of the action was that the judgment was confessed by the judgment debtors in contemplation of the subsequent assignment made by them and for the purpose of creating a preference by such judgment for more than the amount permitted by the statute.

It was held that the provisions of the act were not confined to preferences in the assignment itself, but that they applied to those created by a separate instrument in contemplation of the assignment, including all the instrumentalities which the insolvent debtor, in contemplation of such general assignment,

voluntarily employed to give a preference. But a question arose in the case whether the act applied as against a judgment creditor by confession, who had no knowledge that the debtor confessing the judgment intended to follow it with an assignment.

The learned chief judge in the course of the opinion considered (not decided) the case upon the theory that the creditor had no knowledge when he took his confession of judgment that the debtor contemplated making a general assignment, and said that he thought it might well be decided upon that theory, but because some of his brethren thought, in the absence of a finding of fact that the creditor had this knowledge, the judgment by confession should not be set aside, but allowed to stand as a valid preference to the extent of one-third of the estate of the assignors, he proceeded to discuss the question of knowledge by the creditor, and from the whole evidence he came to the conclusion that the creditor had such knowledge, and that the court was required, under the rule as to implying facts, to infer in support of the judgment under review that the creditor knew when he took his confession of judgment and made his levy that the judgment debtor then contemplated making a general assignment.

A majority of the court agreed in this view, and the judgment by confession was set aside. Some of the members, however, thought that the fact of knowledge could not be implied, and, as it had not been found, they dissented from the views of the majority.

This case is, therefore, authority for holding that when the creditor has knowledge that the judgment is confessed by the debtor in contemplation of his assignment for the benefit of creditors, the judgment under the facts set forth in the case will be regarded as in violation of the statute.

The case under discussion here does not come within the authority of that just cited. A careful examination of some additional facts found by the learned court herein is necessary in order to determine precisely what is the status of the case before us. By the fifty-first finding the court found that the

bill of sale and the assignment to Weinberg were one trans-
action and were both made for the purpose and with the
intent on the part of the vendor and assignor to cheat, hinder
and defraud his creditors, and to divide his property among
creditors whom he wished to prefer in violation of the laws of
the state of New York forbidding the creation of preferences
in any assignment to an extent greater than the assets of the
person making such assignment, and for the purpose of evad-
ing such statute and cheating and defrauding his said other
creditors.

By the fifty-second finding the court found that the vendee
William H. Beck had, at the time of the making of the bill of
sale, actual knowledge of the intent of the vendor and assignor
(his father) to cheat, hinder, delay and defraud his creditors.

By the fifty-third finding the court found that the two Becks,
father and son, at the time when the bill of sale was executed
and for a long time prior thereto, had connived and conspired
together to cheat and defraud the creditors of the father and
to dispose of all his property of any value among his friends
whom he wished to prefer, in violation of the laws of the state
of New York prohibiting any preferences beyond the amount
of one-third of the assets of the person making the general
assignment.

In the first of these three findings the intention of the vendor
and assignor Beck is alone spoken of. The finding in sub-
stance is that it was his intention to cheat some of his creditors
by dividing his property among other creditors whom he
wished to prefer, in violation of the laws of New York, and
by evading those laws. The court finds that this intention of
the elder Beck, the son William H. Beck had actual knowledge
of at the time of the making of the bill of sale.

It is not claimed that the first above-mentioned finding was
intended to refer to these instruments as having been executed
with the intent to hinder, delay or defraud creditors under
those sections of the statute relating to fraudulent conveyances.
(2 R. S. 137, §§ 1–8.) The learned counsel for the plaintiffs
cites the findings for the sole purpose of sustaining his claim

that the bill of sale and assignment were set aside because upon their face they were a fraud upon the statute relating to preferences in general assignments.

The exact extent of the knowledge imputed to the son by the second of these findings is rendered somewhat plainer by referring to the sixteenth and one hundred and first findings of fact made by the court upon the request of the defendants.

Those findings are respectively (1) that at the time of the purchase by the son from the father through this bill of sale, the son did not know that the father intended making a general assignment for the benefit of his creditors; (2) that the son first learned of the assignment made by his father to Weinberg, the day after it was made, when he was told of it by the assignee.

So far as the son is concerned, taking into consideration his ignorance of the existence of any intention on the part of his father to thereafter make an assignment, all the knowledge that can be imputed to him by the fifty-second finding is that he knew of his father's intention to execute the bill of sale and that it would operate as a preference to those creditors benefiting by it. Of any intention on the part of the father to hinder and defraud creditors by making an assignment upon the heels of the bill of sale, the son is by the express finding of the court entirely acquitted. The court in order to characterize the intent of the father, connects the execution of the bill of sale on one day, with the execution of the assignment on a subsequent day and calls them one transaction, and then finds that both were made for the purpose of hindering and defrauding the creditors of the father by dividing his property in a manner not permitted by the statute.

These findings show the fact that a preference was intentionally given to the son and others by the execution of the bill of sale by the insolvent father, and unless that fact constituted a violation of the statute as to preferences, there is no finding that the son was aware of any intent on the part of the father to violate that statute.

It is claimed that the fifty-third finding is a finding of actual

fraud and conspiracy separated from the bill of sale and assignment, and in which fraud they were the culminating acts.

Bearing in mind the ignorance of the son as to any intent on the part of the father to make an assignment, and the result of the finding is that the father meant to pay or secure some of his creditors by making this bill of sale, and the son conspired with the father to that end, the effect of which the court says would be to prefer some of the creditors to a greater amount than one-third of the property of the vendor, and this connivance and action the court characterizes as a conspiracy to cheat and defraud creditors and a violation of the laws of New York in regard to preferences. There was no conspiracy to execute this bill of sale and to thereafter make an assignment, for the court finds the son was ignorant of an intent by the father to execute such an instrument, and indeed it fails to find even that the father had such intention when the bill of sale was made.

Of course a mere conspiracy to cheat and defraud amounts to nothing (*Brackett* v. *Griswold*, 112 N. Y. 454), and if an intent to defraud creditors is only proved by the doing of perfectly lawful acts, the mere fact that such acts are charged as being done pursuant to a conspiracy, is immaterial. The finding of the court of an intent to cheat and defraud creditors is based upon the finding of a conspiracy to dispose of all the father's property among his friends in violation of this statute, and the alleged intent to illegally dispose of the property or to violate the statute, is based, so far as the son is concerned, upon the fact of the execution of the bill of sale by the father, with the knowledge and connivance of the son, the result of which was to give a preference to the son and those other creditors whose debts were to be paid by the son. If this were an illegal act, where the son was in ignorance of any intent on the part of the father to thereafter execute a general assignment, then such act might be characterized as one which did hinder, delay and defraud creditors ; otherwise not.

My examination of these findings of fact has been quite minute because of the claim made by the learned counsel for

the plaintiffs that there was a substantial finding of fraud under the statutes relating to fraudulent conveyances, irrespective of any alleged fraud arising from an intentional evasion or attempt at evasion of the act of 1887, but I cannot see that any such construction can be fairly placed upon what has been found by the trial court. A reference to the opinions of the court makes the matter still more clear, as it there appears that the case was decided upon the theory that the bill of sale and the assignment must be construed together, and although there was a cunningly devised scheme to accomplish by indirection what he was prohibited by statute from doing directly, the vendor and assignor must be held to have failed in such purpose.

The question is, therefore, now fairly before us, whether a creditor who procures a bill of sale from an insolvent debtor in payment of or as security for an honest and subsisting debt, and in ignorance of any intention on the part of the debtor to make thereafter a general assignment, can hold it as against the world, even though the property passing under the bill of sale exceed one-third of the assets of the vendor. If the preference were contained in the general assignment itself, we have no trouble in concluding that it would be unlawful if in excess of the one-third of the assets of the assignor, entirely irrespective of the question whether the creditor was ignorant of the preference when the assignment was made, or whether he was ignorant of the intention of the assignor to make such assignment. In that case the assignor attempts to do in the very instrument itself that which the statute says he shall not do in such an instrument. The inhibition of the statute is not limited to the condition that the creditor shall be in ignorance of the preference. Such preference shall not be made, says the statute, and if made, it shall be void for the excess over one-third the assets. If the creditor attempt to take the preference, he does it by virtue of the very instrument which the statute says shall not give it, or if it do give it, that it shall be void for the excess. There is no room for argument in such case; but it is an entirely different matter where a preference is given by reason of an instrument which the

debtor ordinarily has full power to execute and deliver for the very purpose of thereby giving a preference, and which a creditor has like full power to receive for the purpose of thereby receiving such preference. In such case it seems to me an important consideration to inquire whether at the time the security was taken or the debt paid the creditor knew the debtor was insolvent and intended to follow the bill of sale by an assignment for the benefit of his creditors and to thus divest himself of all control over his property. If he had such knowledge it would be entirely proper, as was held by the second division, to regard the confession of judgment as one of the instrumentalities employed by the debtor in contemplation of making an assignment for the purpose of giving a preference in violation of the act. Whether it should be regarded as one of such instrumentalities ought, as it seems to us, to depend somewhat upon the state of mind of the creditor. If he had knowledge that the debtor intended to make an assignment and that the security was given with the intent that it should result in consequence of the assignment in a violation of the provisions of the act, then we think the security should be adjudged ineffectual. In such case the creditor in effect participates with the debtor in an attempt to violate the act; but even then how far the judgment should go is worthy of some inquiry when the question shall arise. Whether it should set aside the whole security or leave it to fare with the rest under the assignment to the extent of one-third of the debtor's assets in accordance with the act, we do not now determine.

It is said that the statute is aimed at the debtor and his action alone, and that it does not affect the creditor, and hence if the debtor make an illegal preference and thus violate the statute, the intent or knowledge of the creditor is immaterial, and the preference in excess of the amount permitted by the statute must be disregarded. This may well be true when the preference which the debtor makes is contained in the very instrument described in the statute. Any preference the debtor therein makes which runs counter to the statute,

must be treated as the statute directs, and the intent of the assignor in giving the preference is wholly immaterial. But the statute does not and was not intended to prevent a creditor from obtaining payment of or a security, and thereby a preference for his debt, even from an insolvent debtor, and where a court is asked to set aside a security which is disconnected from and prior to any general assignment, on the ground that it is in violation of the act in relation to preferences in general assignments, it at once becomes a question whether that act was ever intended to cover a case where the creditor, obtaining or availing himself of such securities, was ignorant of any existing intention on the part of the debtor to thereafter perform an entirely separate act and make a general assignment. It does not, in terms, cover such a case, and we think it should not be thus extended by construction.

In *White* v. *Cotzhausen* (129 U. S. 329) it appeared that it was the intention of the debtor by the means he adopted, to give to his mother and relatives, and it was their intention to obtain a preference over all other creditors, and what was done was in execution of a scheme for the appropriation of the estate by the debtor's family to the exclusion of the other creditors, thereby avoiding a general assignment. In that case the Supreme Court was administering the law of Illinois, and the learned judge, in the course of his opinion, said that where an insolvent debtor recognizes the fact that he can no longer go on in business and determines to yield the dominion of his entire estate, and in execution of that purpose, or with intent to evade the statute, transfers all, or substantially all, his property to a part of his creditors in order to provide for them in preference to other creditors, the instrument or instruments by which transfers are made, and that result is reached, whatever their form, will be held to operate as an assignment, the benefits of which may be claimed by any creditor not so preferred who will take appropriate steps in a court of equity to enforce the equality contemplated by the statute. Such, said the judge, we think is the necessary result of the decisions in the highest court of Illinois.

The act there under consideration was a statute of Illinois prohibiting the preference in an assignment of any debt or liability over another and declaring such preference void.

Taking the facts into consideration as shown in that case, viz., a scheme entered into by all the family, debtor and creditors, to give and to obtain a preference over all other creditors and by means of such scheme to appropriate the entire estate of such debtor to his own family and to the exclusion of all other creditors, it possibly might not be a great strain upon the statute to hold such a scheme void. But we have no such case. Instead of a scheme shared in by the creditors to appropriate property in evasion of the statute, there is entire ignorance upon the part of the creditor of any such scheme and there is the fact that the creditor is only doing an act which has always heretofore been entirely legal, viz., obtaining security for and probably thereby a preference in the payment of his debt from an insolvent debtor.

In the case in the Supreme Court it is recognized that the statute of Illinois does not contravene the general rule that a debtor when financially embarrassed, may in good faith compromise his liabilities, sell or transfer property in payment of debts, or mortgage or pledge it as security for debts, or create a lien upon it by means of a judgment confessed in favor of his creditor. But all these acts which might otherwise be valid and which a creditor would have the right to avail himself of, are to be declared void if the debtor has at that time recognized the fact that he can no longer go on in his business. Our statute does not, in terms, cover such a case and differs also from the Illinois statute, which declares void all preferences.

It does not seem to us that either the letter or the spirit of our statute covers a case where the creditor is ignorant of any intended violation of the statute by the debtor, and where the act of the creditor is simply to obtain security for the payment of an honest debt due from the debtor to himself.

We are disposed to agree with the Supreme Court of Pennsylvania as the doctrine of that court is announced in *Lake Shore Banking Co.* v. *Fuller* (110 Penn. St. 156), where the

court says : " Nor can we agree that a mere intent of the debtor, unexpressed to the creditor, to give him a preference by paying or securing the debt, although he at the time contemplated and soon after executed a general assignment, operated to defeat such preference on the ground that it is contrary to the act of 1843. Such an intent is not unlawful and cannot be inferred from a proper act. But even if it were, the creditor who has a perfect right to accept payment or security of his debt, *and has not participated in the alleged unlawful intent,* should not be compelled to forfeit his preference in that amount. He at least is innocent and may in good conscience hold the advantage he has obtained."

It has been urged that by this construction the statute may be easily evaded. It is said a failing debtor may prefer his favorite creditors by separate instruments and then make a general assignment, and as a result his favored creditors will be paid in full and those provided for in the assignment will get nothing. Those creditors, however, who participated in or were cognizant of the intent of the debtor, could not avail themselves of their securities beyond, at any rate, the statutory rate (*Berger* v. *Varrelmann*, above referred to), and as to those creditors who were ignorant of any such intent it is not perceived that any great misfortune would attend the allowance of their securities in the same way as has been legal for a long number of years past. The debtor might also neglect to make an assignment and then it would look as if the acts of preference would be legal. The statute of 1887 at any rate does not cover such a state of facts and we do not feel at liberty to enlarge its provisions by construction so as to bring such facts within the condemnation of the statute. If it be thought good policy so to do, the legislature, and not this court, is the body to which application should be made to effect such change in the law.

There are many other facts testified to before the trial court, and not herein alluded to, which the counsel for plaintiffs claims are evidence of actual fraud on the part of the defendants herein, within the statute relative to fraudulent conveyances.

The findings of the court, as we have seen, go upon the ground that the intent of the debtor to violate the statute of 1887 was a fraud, and hence a hindrance and delay to creditors. The actual fraud has not been found and we do not feel like disposing of this case upon a fact not found or passed upon by the court below, while repudiating the real ground upon which the judgment was founded. The actual fraud claimed by the counsel for the plaintiffs may be proved on the new trial and if found as a fact by the court or jury, will dispose of the case in favor of plaintiffs.

We think the judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur, except EARL, J., not voting.

Judgment reversed.