The following is the opinion of the court below :
Ingraham, J.
The facts in this case are not disputed, and the sole difficulty in its disposition arises from the inferences of fact to be drawn from the facts proved.
The effect of the act of 1887, prohibiting preferences in a general assignment to a sum greater than one-third of the assignor’s property, has resulted in a series of decisions which it is difficult to reconcile.
It seems to me, howevei’, that one principle has been established by the court of appeals, and, as I understand it, it is the duty of this court to follow and apply the law as determined by that court, so that when a rule of law is thus settled it is the law of the state, and is to be applied in all cases to which it is applicable.
The rule thus settled is that the statute of 1887 does not apply when no general assignment is made or contemplated. Manning v. Beck, 129 N. Y., 1; 41 St. Rep., 199.
That case presented a question as to the validity of a transfer by a father to his son of property as security for a debt owing by the. father to the son, which transfer was followed by a general assignment made by the father for the benefit of his creditors.
*161 The court held that as there was no evidence to show that the son had knowledge when he received the transfer that the debtor was insolvent and intended to follow the bill of sale by an assignment for the benefit of his creditors, and thus divest himself of all control over his property, the transfer was not void or voidable at the suit of the creditor.
It will be noticed in the case cited that the transfer alleged to be fraudulent was followed by a general assignment, and that the effect of the general assignment and the transfer to the favorite creditor did, in effect, violate the spirit, though not the letter, of the statute of 1887.
The remarks of Peckbam, J., who delivered the opinion of the ■court, determines the question here presented. Thus he says: “But the statute does not and was not intended to prevent a creditor from obtaining payment or a security and thereby a preference for his debt, even from an insolvent debtor, and where a court is asked to set aside a security which is disconnected from and prior to any general assignment, on,the ground that it is in violation of the act in relation to preferences in general assignments, it at once becomes a question whether that act was ever intended to cover a case where a creditor obtaining or availing himself of such securities was innocent of any existing intention on the part ■of debtor to thereafter perform an entirely separate act and make a general assignment. It does not in terms cover such a case, and we think it should not be thus extended by construction.”
And after examining and commenting on White v. Cetzhausen, 129 U. S., 329, the learned judge continues : “It has been urged that by this construction the statute may be easily evaded. It is said that a failing debtor may prefer his favorite creditors by separate instruments, and then make a general assignment, and, as a result, his favored creditors will be paid in full and those provided for in the- assignment will get nothing; those creditors, however, who participated or who were cognizant of the intent of the debtor could not avail themselves of their security beyond, at .any rate, the statutory rate, and, as to those creditors who were ignorant of any such intent, it is not perceived that any great misfortune would attend the allowance of their securities in the same way as has been legal for hundreds of years past. The debtor might neglect to make an assignment at all, and then it would look as if the act of preferences would be legal. The statute of 1887, at any rate, does not cover such a state of facts, and we do not feel at liberty to enlarge its provisions by construction so as to bring such facts within the condemnation of the statute.”
I think we have here a controlling decision which requires me to hold that a mortgage, pledge or bill of sale to a creditor with the intent only to secure such creditor to the amount of his lawful demand against the debtor, not followed by a general assignment, is not invalid because by that means a creditor obtains, in payment of or as security for his demand, a sum greater than one-third of the debtor’s property at the time such payment was made or security given.
*162 In this case the one question, therefore, is, was there a general assignment?
It is clear that there was not a general assignment made by the debtor within the meaning of the act of 1887.
To constitute a general assignment it must, in the first place, be general; that is, it must include all of the debtor’s property ; the assignee must be a trustee, and not the absolute owner, mortgagee or pledgee. “ The assignee is merely trustee and not absolute owner; he buys nothing and pays nothing for the performance of trust duties.” Brown v. Guthrie, 110 N. Y., 441; 18 St. Rep., 311.
And the essential difference between a general assignment to an assignee in trust and a pledge is that in one case the absolute title passes to the assignee, while in the case of a pledge the title remains in the pledgor, and it is the right of possession and to hold or apply the pledge to secure the debt that is vested in the pledgee.
The instrument sought to be set aside in this case contains none of the elements of a general assignment. It transfers property to certain creditors themselves, not to an assignee in trust, and, while it is in form a grant, bargain, sale and transfer, it is only of specific property, not by any means all of the debtors property, and the title in the grantee is limited by the language used in the transfer, which is “ To have and to hold to the said banks as security for the said indebtedness to them' respectively, with authority to the said banks to hold or sell the same at public or private sale, and to apply the proceeds to the payment of the indebtedness, rendering the overplus, if any, to the bailors.”
The legal effect clearly is a pledge of the property to the creditors to secure the payment of their demands, upon payment to the banks of the amount due to them, any right or interest they had in property covered by the transfer would have been divested, and the right to possession of the property would have revested in the debtors, and they could have maintained replevin to recover the goods. Under the authority contained in this instrument the banks took immediate possession of the property, sold and transferred the same as authorized by the instrument, and applied the proceeds to the payment of their debts.
At that time, so far as appears, there was no intent to make a general assignment, and none was in fact ever made. If, as was expressly held in Manning v. Rec/s, supra, the defendants had the legal right to give to these creditors a pledge of their property to secure the payment of the indebtedness, and intended to do nothing else except what they were thus legally entitled to do, there could be in the nature of things no intent to defraud creditors within the provision of the Revised Statutes as to fraudulent conveyances. Undoubtedly, they intended to pay to these creditors their demands, and to do so by the transfer to them of this property and the application of the proceeds thereof to the payment of such demands, but there was no intent to follow such a provision by a general assignment so as to put all the rest of their property *163 out of their control, and thus to avoid the prohibition of the statute, and the fact that they did subsequently make pledges or transfers of their other property to other creditors, to secure other demands, cannot affect this valid exercise of a debtor’s power to provide for the payment of one demand before that of his other creditors, when the transferee had no knowledge that such subsequent transfer was intended.
Charles Donohue and B. N. Cardozo, for app’lts; S. B. Brownell, J. B. Talmadge and C. Strauss, for resp’ts.
The case of Abegg v. Bishop, decided by the general term in this department in October, 1892, 49 St Rep., 191, is distinguished from this case by the fact that there a general assignment immediately followed the transfer attacked, and the rule laid down in the case of Berger v. Varrelmann, 127 N. Y.. 281; 38 St. Rep., 813, was applicable, and the fact of that decision is, as I understand it, that where, by any method or scheme in which a general assignment for the benefit of creditors is a part, a greater preference is allowed than is provided for by the statute, with intent to evade the statute, such a scheme is void under the provisions of the Be-vised Statutes in reference to transfers made with intent to hinder, delay and defraud creditors.
Thus the presiding justice, delivering the opinion of the court, says: “ Flow, in case a party who contemplates making an assignment for the purpose of evading the restrictions of the assignment law knowingly makes a transfer of his property as security to creditors in excess of that which is allowed by the assignment law, and thereby attempts to evade the provisions of the statute, such transaction is made with intent to hinder, delay and defraud his creditors, and, therefore, under the express words of the statute, it is void, whether the transferee has knowledge of such intent or not.”
This rule, however, does not apply where the making of an assignment is not contemplated, and where no assignment was ever made, and Manning v. Beck, supra, as I understand it, expressly holds that the statute of 1887 does not affect any transfer that is not contained in the general assignment, or made in contemplation of the making of, or as a part thereof.
Applying the rule thus stated, I am unable to see that the debtor in this case did anything except what he had a lawful right to do, and intended to do nothing except what he did, and that he did not intend to hinder, delay or defraud his creditors.
The defendants should, therefore, have judgment, with costs.
Judgment affirmed, with costs, on the opinion of the court below.
Van Brunt, P. J., Follett and Parker, JJ., concur.