security was an absolute one, and the allowance of the undertaking without the exception of the defendant is compulsory. In the absence of any reason for this distinction, in view of the fact that this provision of the Code follows immediately other provisions relating to the application for security, the granting of the order, and the allowance of the undertaking, I think the intent is manifest to give to the court the right to grant the order appealed from, which I think should be affirmed.

But granting, for the argument, the correctness of the strict interpretation given to the statute in the prevailing opinion, I still think this order should be affirmed. In the papers before the court all the facts appear. The defendant asked in his notice of motion not only for additional security, but for other relief to which he might be entitled. The Special Term might upon that motion have made an order requiring the defendant to give security for costs nunc pro tunc as of a date prior to the first undertaking that was given, and such an undertaking would in that case be deemed in law to have been given pursuant to such order to satisfy the conditions of this statute. Not only could this provision have been inserted by the Special Term, but this court may modify the order to include such provision and affirm the same as modified, and this, in my judgment, should be done, if necessary to the affirmance of this order.

---

(41 Misc. Rep. 490.)

### NEW YORK CENT. & H. R. R. CO. v. REEVES et al.

(Supreme Court, Special Term, Erie County.   October, 1903.)

1. INJUNCTION—RAILROAD TICKETS—SALES BY TICKET BROKERS.

In an action by a railroad company, which had issued certain tickets for the Buffalo Exposition, against defendants, ticket brokers in Buffalo, who were alleged to be fraudulently buying of the original purchasers of such tickets the return portions thereof and selling them to persons who, falsely impersonating the original purchasers, used them for passage, the complaint alleged that the brokers conspired falsely to represent that the tickets were transferable and good for passage; that the brokers and the sellers and purchasers of the tickets were conspiring to deceive the company as to the identity of the person presenting the ticket, and will continue so to do, and that the brokers are interchanging such tickets to the great delay and damage of the railroad company. *Held*, that the court would not interfere to protect each one of thousands of tickets, they being personal property, which the purchaser, as owner, has a right to sell, merely because the company may not be able to determine whether the presenter of the ticket is the original purchaser, and where the railroad company, under the terms of the ticket, has a right, if it is presented by a third person, to refuse to honor it, and exact full fare.

2. SAME—MULTIFARIOUSNESS.

A complaint in a suit by a railroad company to restrain some 60 ticket brokers in selling return round-trip tickets issued for an exposition at Buffalo, such persons having no connection with each other, is bad for multifariousness.

3. SAME—CONSPIRACY.

Allegations, in a bill to restrain the sale of return round-trip tickets by ticket brokers, of a malicious conspiracy to defraud plaintiff, are insufficient to justify equitable relief where it is not stated in what the conspiracy consists.

Action by the New York Central & Hudson River Railroad Company against Albert A. Reeves and others.   Motion to deny a temporary injunction.   Denied.

John G. Milburn and Charles A. Pooley, for plaintiff.
Louis Marshall and Tracy C. Becker, for defendants.

LAMBERT, J.   This action was commenced by the service of a summons and complaint in August, 1901, and an order to show cause containing a restraining clause was made returnable in eight days thereafter.   The hearing thereon was continued to meet the convenience of counsel until October of that year, when the questions involved were finally submitted.   The purpose of the action was to restrain the defendants during the Pan-American Exposition, held in the city of Buffalo, and ending October 31, 1901, from selling and dealing in special low-rate tickets issued by the plaintiff to persons expressing a desire to attend the exposition.   The decision of the motion at this time can serve no useful purpose to the parties herein involved.   The question is purely academic.   I have, however, been requested by counsel to indicate by formal expression my views of the law applicable to the question presented, and I have consented to do so in a memorandum.   The defendants, something over 60 in number, are ticket brokers, sometimes known as "scalpers," permanently or temporarily transacting business in the city of Buffalo. The complaint, after setting forth the formal allegations of incorporation, the issuing of the special rate nontransferable tickets, alleges, and these allegations are supported in a measure by the affidavit on which the order was granted, that the defendants, and each of them, "are engaged in business as ticket brokers or ticket scalpers in the city of Buffalo, county of Erie, and as such maliciously, fraudulently, and illegally procure from the original purchasers and other persons the return portions of said tickets from Buffalo to the initial point, and are engaged in selling the same to other persons, who, by falsely impersonating the original purchasers before the properly appointed and constituted agents of the plaintiff, and falsely pretending to be the original purchasers, are thereby enabled to use for transportation over the railroads of the plaintiff such tickets, when they are not entitled to the use of same, and which, in their hands, would not be accepted for transportation but for the imposition, fraud, and deception practiced by said purchasers and the defendants above set forth."   It is also alleged that each and all of the defendants, with full knowledge of the character of the tickets above described, and of the fact that the same were issued at low special rates on condition of being nontransferable, have engaged in the scheme and conspiracy to defraud the plaintiff and connecting lines and to cheat the traveling public, upon whom the plaintiff depends for business, by maliciously inducing the persons to whom such tickets were issued by the plaintiff and connecting lines to sell the same by false and fraudulent representations, and that they are in fact transferable and good for use by others than those named therein, to purchase such tickets by false and fraudulent representations; and in many cases the sellers and

purchasers of such tickets are engaged and will engage with the defendants in attempting to deceive the plaintiff and the officers in charge of its trains as to the identity of the purchasers of such tickets with the person to whom the same were issued. It is still further alleged "that the defendants had conspired, are conspiring, and will conspire with many persons to the plaintiff unknown, and with each other, to unlawfully and fraudulently perpetrate upon the plaintiff fraud and deceit by having such tickets accepted for transportation by other persons than the original purchaser thereof, and thus entailing upon the plaintiff numerous losses and great daily damage"; and still further it is alleged that "the defendants above named have conspired, are conspiring, and unless restrained by this court will continue to conspire, to interchange tickets previously purchased by one or more of the defendants from the original purchaser of such ticket with one or more of the defendants who have a purchaser for such ticket, and conspire with each other to communicate the kinds of tickets in stock for sale by them, and that said defendants have banded and conspired together, and are still banding and conspiring together, to carry on said business of purchasing said tickets above referred to, and thereby greatly injure and damage the business of the plaintiff and lessens its earnings and profits to the extent of at least several thousands of dollars daily; and that, unless restrained by the injunction of this court, the defendants will continue to engage in such business, and to purchase and resell such tickets, and to falsify the same, and to aid the purchasers thereof from them to impersonate the original purchasers, and thus impose upon and defraud the plaintiff, to its great and irreparable damage."

Do these allegations contain facts sufficient to justify the interposition of equity and the issuing of injunctive relief? It is true, of course, that the complaint contained much of what has been described in one of the light operas as "corroborative detail intended to give verisimilitude to a bald and unconvincing narrative"; but the gravamen of the action is to be found in the allegations above set forth, and, unless they are sufficient, the motion now before the court should be denied. It is important, therefore, to an intelligent understanding of the question, that we analyze the averments, and see what ground is afforded for the ultimate relief demanded. In the first place, we are to have in mind that upwards of 60 gentlemen, each of them engaged in a lawful business (People ex rel. Tyroler v. Warden, 157 N. Y. 116, 51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763), having no connection with each other, so far as appears from any facts set forth in the complaint (for the conclusions of fraud, conspiracy, etc., set forth by the pleader cannot be accepted as facts), are made defendants in this action, and this court is asked to restrain them from purchasing, or in any other way getting possession of, the tickets described in the complaint, or from selling the same. The plaintiff is a railroad corporation having all of the rights, in so far as its corporate property is involved, that belong to any member of this state. It sells a nontransferable ticket to John Doe, of the city of New York, good for one round trip from the initial

point to Buffalo and return, if used within a number of days. This ticket, it cannot be doubted, under the broad definition contained in sections 4 and 12 of the statutory construction law (Laws 1892, p. 1487, c. 677), is personal property. The contract, such as it is, and entirely independent of the rights of the parties under it, belongs to the purchaser. He may use it for the purpose of securing the transportation which it promises in accord with the agreement, or he may frame it, and hang it up in his home, or he may destroy it, or give it away, or he may sell it, and the plaintiff has no interest in the matter whatever. The ticket belongs absolutely to the purchaser, and while the rights of the parties under the contract may be limited, and the plaintiff, it may be, would be under no obligation to transport any one other than the original purchaser, the provision that the ticket is not transferable relates to the rights of the parties under the contract, and not to the written evidence of such contract. The ticket itself may be lawfully and properly transferred to any one, though the right to transportation may be limited to the purchaser under the provisions of the contract. The mere sale or purchase of the ticket does not concern the plaintiff in any degree. It has no interest in the ticket as such. All the right which it has is that which is expressed in the contract, and, if the ticket is presented by any one other than the original purchaser, if the limitation is lawful and for a good consideration, the plaintiff may refuse to honor the same, and may collect full fare. Obviously, if the plaintiff may refuse to honor the ticket in the hands of a person other than the original purchaser, and may exact the full cash fare, it is not damaged by the transfer of the ticket, and the mere fact that it may be difficult for the plaintiff to know whether the person presenting the same is John Doe or Richard Doe is no good reason why a court of equity should interpose and surround each ticket as it is issued with the protection of an order of the Supreme Court, not because of any unlawful act of these defendants, but because some one unknown to this action may be tempted to make an improper use of the same. In the somewhat analogous case of an action for the cancellation of written instruments it has been held that a resort to equity, to be sustained, must be expedient either because the instrument is liable to abuse from its negotiable nature, or because the defense, not arising on its face, may be difficult or uncertain at law; or from some other special circumstances peculiar to the case, and rendering a resort to equity highly proper. And it is now well established that equity will not interpose to decree the cancellation of an instrument the invalidity of which appears upon its face. Town of Venice v. Woodruff, 62 N. Y. 462–467, 20 Am. Rep. 495, and authorities there cited; Town of Springport v. Teutonia Savings Bank, 75 N. Y. 397–401. Assuming the limitation of these tickets to be lawful, the purchaser from one of these defendants gains no greater right in the ticket than possessed by the original purchaser, and that right was confined to his own personal transportation, and this appears upon the face of the ticket. The mere fact that the servants of the railroad company are unable to determine whether the person

presenting the same is the original purchaser would not seem to warrant interference, more than in the case of nonnegotiable instruments. By the terms of the contract the original purchaser is called upon to sign the return portion of the ticket in the presence of the plaintiff's agents, and this court will not presume that any one not a party to this action will falsely impersonate another for the purpose of working fraud upon the plaintiff. The presumption of innocence belongs to every individual, and, in the absence of facts justifying the inference, a court of equity will not assume that the traveling public, or any considerable portion of it, will engage in fraudulent transactions. The plaintiff, if it can establish the fraud, is entitled to take up the ticket, and to charge full fare, according to the terms of the contract, and it cannot be held as a matter of law, under the allegations of its complaint, that it will be damaged with this remedy in its own hands.

It is not to be doubted that in a court of equity all of the parties interested in a given transaction may be brought in as defendants for the purpose of a complete disposition of the matters in controversy, but in the case now before us the plaintiff undertakes to bring in as defendants persons who may be interested in any one of thousands of separate and distinct transactions, and we are clearly of opinion that the complaint is open to the objection of multifariousness. In the case of John Doe purchasing a round-trip ticket from New York to Buffalo, there is a single transaction. Any one who is connected with this transaction, who claims any rights or interests under this contract, or who is engaged in any fraudulent transaction in respect to the same, is, under the authority, a proper party to an equitable action. But where the subjects of the suit are in themselves perfectly distinct, the plaintiff cannot bring into the compass of one suit such different objects, because it obliges each defendant to the unnecessary trouble and expense of a litigated question with which he has no concern. Brinkerhoff v. Brown, 6 Johns. Ch. 156. Multifariousness, properly speaking, is where different matters, having no connection with each other, are joined in a bill against several defendants, a part of whom have no interest in or connection with some of. the distinct matters for which the suit is brought, so that such defendants are put to the unnecessary trouble and expense of answering litigating matters stated in the bill, in which they are not interested, and with which they have no connection. Note to Boyd v. Hoyt, 5 Paige, 79, citing Newland v. Rogers, 3 Barb. Ch. 432, 20 Am. & Eng. Ency. of Law (2d Ed.) 1080. The cause of action attempted to be set forth in the complaint in the matter now before us does not relate to any specific transaction. It attempts to make the plaintiff's whole business of issuing and selling Pan-American tickets a single transaction, and to make parties defendant every person who may attempt to do anything in relation to the purchase or sale of such tickets. This is attempted to be justified on the proposition which has been asserted that "a bill against several persons must relate to matters of the same nature, and having a connection with each other, and in which all of the defendants are more or less concerned, though the rights in respect to the general subject of the case may be

distinct"; but in none of the adjudicated cases which are controlling in this jurisdiction do we find this rule apply to a state of facts in any reasonable degree analogous to the facts herein asserted. In the case in which the rule is asserted (Brinkerhoff v. Brown, 6 Johns. Ch. 156) the court says that:

"When we consider that the plaintiffs in the case now before me are judgment creditors, having claims against the Genesee Company, perfectly established, and not the subject of litigation in this suit, and that the general right claimed by the bill is a due application of the capital of that company to the payment of their judgments; that the subject of the bill and the relief, and the only matter in litigation, is the fraud charged in the creation, management, and disposition of that capital, and in which charge all of the defendants are implicated, though in different degrees and propositions—I think we can safely conclude that this case falls within the reach of that principle, and that the demurrer cannot be sustained."

An examination of the authorities will show that this principle, in this state at least, has never been extended to a case such as is here presented.

In Board of Supervisors v. Deyoe, 77 N. Y. 219, the county treasurer had issued notes purporting to have been authorized by the board of supervisors. These notes aggregated a large amount in excess of the authority, and some 30 or more of the holders of these notes had commenced actions at law to collect the same. There were 50 or more of the holders of these notes, and on demurrer it was held that upon equitable principles it was proper to implead the holders of the notes for the purpose of having their respective rights and the liability of the county determined in one action; that the claims were of the same general character, and the action was maintainable for the purpose of preventing the multiplicity of suits, and to protect plaintiff against the hazard of a double recovery.

The same principle was involved in the case of National Park Bank v. Goddard, 131 N. Y. 494, 502, 30 N. E. 566, where the above cases were cited and approved. But in no case has it been suggested that the plaintiff might embrace within its complaint a large number of transactions, some of them not even in existence, and then bring in all of the parties who might in the future have some connection with these transactions, which might or might not be consummated, and enjoin them from doing any act which might enable some party or party unknown to work a fraud upon the plaintiff. In Strobel v. Kerr Salt Co., 164 N. Y. 303, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. Rep. 643, it was held that different riparian owners of distinct parcels of riparian land, who have a common grievance for an injury of the same kind inflicted at the same time and by the same acts, though the injuries differ in degree as to each owner, may unite in a common action to enjoin a higher riparian owner from diverting or polluting the stream; and many cases of a similar character are to be found; and the case of Bradley v. Bradley, 165 N. Y. 183, 58 N. E. 887, is conceded to be a border line case, and affords no authority for an extension of a doctrine to reach the facts presented in the case. The case is not brought within equitable principles by characterizing the acts of the defendants, or the acts which it is assumed they

are going to commit, with reference to some transactions yet to be, as "maliciously, fraudulently, and illegally done," without stating facts from which this inference may be properly drawn; nor is the case strengthened by the allegation that defendants have "engaged in a scheme and conspiracy to defraud the plaintiff," where it is made to appear by the facts stated in what this alleged conspiracy consists. To allege that the defendants have conspired and will conspire is to allege but a conclusion of the pleader, which is not strengthened by being sworn to positively; and, if we keep in mind the fact that these alleged schemes and conspiracies are in reference to matters in a large degree which have taken no form, it will be seen that there is no ground on which a court of equity may properly take jurisdiction. It is not alleged that any of the defendants have threatened to buy or sell these tickets hereafter to be issued; there is nothing from which the court may reach the conclusion that any one is going to purchase these tickets, or that, if they do purchase them, they will sell them to any of the defendants; or that, if they do sell them, that any of the defendants will be able to sell them; and the whole case rests upon mere assumption based upon assumption, while all of the presumptions of law are in favor of innocence, honesty, and a discharge of the duties of citizenship. The law is well settled that a mere conspiracy to cheat and defraud amounts to nothing (Brackett v. Griswold, 128 N. Y. 644, 28 N. E. 365), and if an intent to defraud is only proved by the doing of perfectly lawful acts the mere fact that such acts are charged as being done pursuant to a conspiracy is immaterial. Manning v. Beck, 129 N. Y. 1, 11, 29 N. E. 90, 14 L. R. A. 198. To sustain an action for fraud and deceit, the fraud and injury must be connected. The one must bear to the other the relation of cause and effect, and it must be seen in an appreciable sense that the damage flows from the fraud as the proximate, and not as the remote, cause. Rothmiller v. Stein, 143 N. Y. 581, 588, 38 N. E. 718, 26 L. R. A. 148. In this case there is no direct connection between the alleged conspiracy and the supposed injury. The so-called fraudulent practices on the part of the defendants cannot result in damage to the plaintiff without the intervention of persons who are not parties to this action, and who may not be presumed to be guilty of offenses against honesty without some evidence to support such a conclusion, and this court is not bound to presume that a ticket in the hands of a person other than the original purchaser, and which is limited to such purchaser, will be accepted for passage upon the plaintiff's trains, or that damage would result if this should happen. "I confess," says Parker, C. J., in the case of People ex rel. Tyroler v. Warden, 157 N. Y. 116, 123, 51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763, "I am unable to see how such a sale defrauds a transportation company. If a transportation company sell a ticket from New York to San Francisco, it undertakes to carry the holder from one place to the other. It costs the company no more to carry one person than it does the other. How, then, can it be defrauded or in any way prejudiced by the transfer of such a ticket by the purchaser to another person?"

It is no part of the duty of a court of equity to assume evil. It has fulfilled its functions when it has found a remedy for actual or threatened wrong for which the law furnished no adequate redress, and it cannot properly take jurisdiction where it is not shown that the wrong which is feared will probably result from the wrongful acts of the parties who are before the court, without the intervention of persons to the court unknown. So far as may be gathered from the complaint, the plaintiff cannot suffer injury without the acts of parties who are strangers to this action, if, indeed, it may suffer damages at all; and where the plaintiff has reserved to itself the power of regulating the method of authenticating the ticket, and of taking it up and collecting full fare where it is presented by a person other than the original purchaser, it takes a good deal of presumption against the current of law to make out irreparable injury to the plaintiff through the acts of all of these defendants, some of whom may never have any relation to any given transaction.

We are unable to find facts which justify the interposition of equity as against a single defendant, and there is clearly no greater cause of action against all of them, because there is an entire lack of a single transaction in which all of them have an interest, or in which their rights are involved.

The motion to continue the injunction pending the trial of the action should be denied.