Central National Bank of the City of New York et al., Respondents, *v.* Sigmund J. Seligman et al., Appellants.

<span style="float:right">138  435<br>142  289</span>

A preference exceeding in amount one-third of the assets of an insolvent who has made an assignment for the benefit of creditors, given either in the assignment itself or by a separate instrument, which may be construed as part of the assignment, does not, under the provision of the General Assignment Act of 1887 (Chap. 503, Laws of 1887), prohibiting such a preference, in the absence of any question as to the *bona fides* of the debt preferred, or of any claim of fraud, render the assignment wholly void.

The statute operates upon the preference only, not upon the assignment itself or the title of the assignee; and it only operates to reduce the preference to one-third, and this, although the assignor and the preferred creditor were, when the act was done operating as a preference, cognizant of the fact that it would exceed the statutory limit.

In case of such an unlawful preference, the rights of creditors can only be asserted by the assignee or by an action in aid of the assignment for the benefit of all the creditors.

In an action to set aside an assignment, it appeared that on the same day, but after the making and filing of the assignment, and after the assignees had taken possession of the property assigned, certain creditors obtained judgments against the assignors upon offers and acceptances under the Code of Civil Procedure in suits commenced; that the judgment creditors issued executions and caused the stock of goods assigned to be levied on and sold. The entry of the judgments was intentionally postponed until after the filing of the assignment, the assignee having refused to permit them to be entered so as to give them a preference over the assignment. *Held*, that said judgments and executions did not constitute a preference within said act.

*Central Nat. Bank* v. *Seligman* (64 Hun, 615), reversed.

(Argued May 1, 1893; decided June 6, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 3, 1892, which modified and affirmed as modified a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Nathaniel Myers* for appellants Hertz Bros. & Co. The act of June 2, 1887, does not comprehend preferential transfers accomplished by any mode excepting only that technically known as a general assignment. (*Berger* v. *Varrelmann*, 127 N. Y. 281; *Spelman* v. *Freedman*, 130 id. 421; *Manning* v. *Beck*, 129 id. 1; *Knapp* v. *McGowan*, 96 id. 75.) In no event can the act of June 2, 1887, be availed of, excepting only in an action or proceeding under and in aid of the assignment, and for the benefit of the general body of the creditors. (*Crow* v. *Beardsley*, 68 Mo. 435; *White* v. *Cotzhausen*, 129 U. S. 344; *Richardson* v. *Thurber*, 104 N. Y. 606.) It is inconsistent for a creditor to insist that a judgment in contemplation of an assignment is violative of the One-Third Act and, therefore, to be deemed a part of a contemplated general assignment, and at the same time to insist that the general assignment is void, and that he should monopolize not only the assigned property but also that affected by the judgment. (*Manning* v. *Beck*, 129 N. Y. 1; *Cox* v. *Wilder*, 2 Dillon, 45.) Herts Bros. & Co. received the amount of their claim, not by virtue of any title in a fraudulent assignee, but by a judgment which they had a right to obtain, and their right to obtain it cannot be impeached, except only on the ground of actual fraud in fact. (*Knower* v. *C. N. Bank*, 124 N. Y. 552; *Smith* v. *Wise*, 132 id. 172; *Peyser* v. *Myers*, 135 id. 600.) Herts Bros. & Co. had no knowledge of the estimated or actual value of the estate of their debtors. (129 N. Y. 13.) The only remedy against Herts Bros. & Co. on the facts of this case is an action of trover by the assignee for the benefit of the estate and in the interest of the general body of the

creditors; and to that remedy Herts Bros. & Co. are still liable. (*Dudley* v. *Danforth*, 61 N. Y. 626.)

*A. J. Dittenhoefer* for appellants. The Herts and Moses judgments, having been entered after the title to the assignors' property had become vested in the assignee, cannot be held to be part of and preferences under the assignment. (*Manning* v. *Beck*, 129 N. Y. 1; *Stein* v. *Levy*, 55 Hun, 381; *Bishop* v. *Stebbens*, 43 id. 246; *William* v. *Weldon*, 109 N. Y. 333–337; *Hine* v. *Bome*, 114 id. 350; *Burrows* v. *Laindorf*, 8 Iowa, 96; *Perry* v. *Holden*, 22 Pick. 269; *Lancaster* v. *Whelan*, 62 N. H. 479; *Holt* v. *Bancroft*, 30 Ala. 193; Code Civ. Pro. § 1274; *Varnum* v. *Hart*, 119 N. Y. 101.) Herts, Moses and Sonneborn being *bona fide* creditors, and the debts for which they respectively obtained judgments and the assignment of accounts being honestly due to them, an action can in no event be maintained to compel them to pay the moneys realized by them to the plaintiffs. (*Knower* v. *C. N. Bank*, 124 N. Y. 552; *L. M. Bank* v. *Halstead*, Id. 674; *Smith* v. *Wise*, 132 id. 172; *White* v. *Cotzhausen*, 129 U. S. 329.) The Herts and Moses judgments and the accounts assigned to Sonneborn do not, when added to the small preferences in the body of the assignment, exceed the statutory limit. (*Thalheimer* v. *Klapperty*, 12 N. Y. Supp. 99.) The assignment having been set aside in a previous action instituted by these same plaintiffs and a receiver appointed therein, the title to all the debtor's property is vested in the receiver, who alone has a standing to recover from the defendants, Moses, Herts and Sonneborn, if the action can be maintained at all — the moneys they respectively received on their judgments and the assignment of accounts. (*Passavant* v. *Bowdoin*, 15 N. Y. Supp. 8; *Hauselt* v. *Patterson*, 124 N. Y. 350; Baylies N. Tr. & App. 301; *Mandeville* v. *Marvin*, 30 Hun, 282–287; *Cumber* v. *Schoenfeld*, 12 N. Y. Supp. 282; *S. O. Co.* v. *A. Oil Co.*, 79 N. Y. 506–510; *Roberts* v. *Tobias*, 120 id. 1–5; *Shaver* v. *Brainard*, 29 Barb. 25; *Howell* v. *Finch*, 5 Duer, 666; *Mahr* v. *N. U. F. Society*, 127 N. Y. 452.)

The General Term directed that the judgment appealed from
should be modified by omitting therefrom three certain judg-
ments in favor of the plaintiff, the Central National Bank,
against Seligman Brothers & Co.　This action cannot be main-
tained on those judgments for the additional reason that the
Central National Bank did not exhaust its remedy at law.
(*Field* v. *Chapman*, 13 Abb. Pr. 320; 15 id. 434; *Howard*
v. *Sheldon*, 11 Paige, 558; *Dunlevy* v. *Tallmadge*, 32 N. Y.
457–463; *C. C. Bank* v. *Parent*, 12 N. Y. Supp. 234.)　The
learned trial judge erred in refusing to find the facts as
requested by the defendant.　(*Kennedy* v. *Porter*, 109 N. Y.
526; *Rotherby* v. *N. Y. R. Co.*, 24 Hun, 172; *Griffiths* v.
*Phelps*, 21 Wkly. Dig. 90; *The A. E. Packer*, 140 U. S.
360, 370.)

*Alex. Blumenstiel* for respondents.　Where the General
Term has approved a finding, and there is in any view evi-
dence to sustain it, the Court of Appeals is bound by it.
(*Rutherford* v. *Schottman*, 119 N. Y. 604; *Healy* v. *Clark*,
120 id. 642.)　The papers filed constituted but one instrument,
intended to effect an unlawful purpose, even though the instru-
ment consisted of separate papers.　Which of the sheets con-
stituting the transfer was delivered or filed first can make no
serious difference.　The point is that all of them formed one
instrument of conveyance.　(*Britten* v. *Lorenz*, 45 N. Y. 51;
*Hine* v. *Bowe*, 114 id. 350–355; *Putney* v. *Freisleben*, 11
S. E. Rep. 337; *Schultz* v. *Hougland*, 85 N. Y. 469; *Loos*
v. *Wilkinson*, 110 id. 195; *F. N. Bank* v. *Bard*, 59 Hun,
529; *Starin* v. *Kelly*, 88 N. Y. 418; *Billings* v. *Russell*, 101
id. 226.)　Assuming that the purpose of the judgments and
transfers was to evade the law and to give unlawful prefer-
ences, then we submit the transaction was void under the pro-
vision of the statute against fraudulent conveyances.　(2 R.
S. chap. 7; Laws of 1888, chap. 503; *Sands* v. *Codwise*, 4
Johns. 598; *Wood* v. *Hunt*, 38 Barb. 302, 309; *Davis* v.
*Leopold*, 87 N. Y. 620; *Loos* v. *Wilkinson*, 113 id. 490, 491;
*Smith* v. *Wise*, 132 id. 172.)　The executions upon plain-

tiffs' judgments are correct in form. But even if they were not, the defendants cannot in this action attack them for any irregularity. (*P. Bank* v. *Morton,* 67 N. Y. 198; *Field* v. *Chapman,* 23 How. Pr. 80; Code Civ. Pro. §§ 1932, 1934, 1935; *Crook* v. *Rindskoff,* 105 N. Y. 476; *Wright* v. *Nostrand,* 94 id. 31.) There can be no claim made that any of the findings was unsupported by the evidence. (*Bennett* v. *Bates,* 94 N. Y. 354; *Whitaker* v. *I. S. M. Co.,* 18 Wkly. Dig. 392; *Fluck* v. *Village of Green Island,* 122 N. Y. 107.) To make exceptions to a refusal of the court to find a fact sufficient ground for a reversal it must appear that had it found as requested the result would have been affected. (*Baldwin* v. *Doying,* 114 N. Y. 452, 455; *Stewart* v. *Morse,* 79 id. 629; *Decker* v. *Decker,* 108 id. 128.) If we admit, for the purposes of the argument, that the receiver was entitled to bring the suit, still it must be granted that if he refused to bring it he could have been joined as defendant. There would, therefore, have been a defect of parties defendant, which should have been presented by demurrer or by the answer, in order to be available as a defense. (Code Civ. Pro. §§ 433, 488, 498, 499, 723; *Decker* v. *Decker,* 108 N. Y. 128, 135, 136; *Sullivan* v. *N. Y. R. C. Co.,* 14 Civ. Pro. Rep. 365; *Spring* v. *Short,* 90 N. Y. 545.) The receiver represented only the judgments which were in this action stricken out. (*Wright* v. *Nostrand,* 94 N. Y. 131.) The decree setting aside the assignment in which Joseph Koch was appointed receiver was not an adjudication as against any of the defendants, except the assignee and the debtors, so that as regards the other defendants it was incumbent upon them to establish the invalidity of the assignment as a distinct issue. (*Loos* v. *Wilkinson,* 110 N. Y. 195.)

Andrews, Ch. J. The firm of Seligman Bros. & Co., on the 2d day of July, 1888, made a general assignment of their property for the benefit of creditors. This action was brought by the plaintiffs, to whom the firm was indebted at the time of the assignment, and who subsequently procured judgments

against the assignors for their debts, to set aside the assignment for fraud, and to have the property of the assignors applied to the payment of the judgments of the plaintiffs. The plaintiffs joined as defendants with Seligman Bros. & Co., and the assignee, one Moses, and the members of the firm of Herts Bros. & Co., and one Sonneborn. Moses and the firm of Herts Bros. & Co. obtained judgments against the assignors, which were entered on the same day the assignment was made, but a few minutes after the filing of the assignment. They were obtained upon suits commenced, followed by offer and acceptance under the Code. The plaintiffs in these judgments issued execution thereon, and the sheriff levied on the stock of goods assigned, and subsequently, on being indemnified, sold the property on the executions, and realized thereon sufficient to satisfy the Moses judgment of $4,218.53, and the additional sum of $19,289.85, which was applied on the judgment of Herts Bros. & Co. The assignors, on the day of the assignment, but as is to be inferred, prior to its execution, assigned to Sonneborn accounts due the assignors, upon which he collected the sum of $7,806.32 to apply on a debt owing by the assignors to him.

The plaintiffs demanded in addition to the other relief that the judgments in favor of Moses and Herts Bros. & Co., and the executions thereon, be vacated and set aside, and that they account for and pay over to a receiver, to be appointed for the benefit of the plaintiffs, the sums severally collected by them on the executions, and that the transfer of accounts to Sonneborn be set aside, and that he likewise be required to account for and to pay over the sums collected by him thereon. The judgment at Special Term set aside the general assignment, the judgments and executions in favor of Moses and Herts Bros. & Co., the transfer made to Sonneborn, and adjudged that these parties respectively account for and pay over to a receiver the sums severally received by them as above stated, with interest, to be applied in satisfaction of the judgments obtained by the plaintiffs, which in the aggregate are nearly equal in amount to the sums which the defendants

Moses, Herts Bros. & Co. and Sonneborn are required to pay. The General Term modified and affirmed the judgment of the Special Term as modified, the modification, however, not affecting the theory of the action or of the Special Term judgment.

This case presents an important question arising under chap. 503 of the Laws of 1887. That question is whether a preference in a general assignment by insolvents for the benefit of creditors, made either in the assignment itself or by separate instruments which may be construed as parts of the assignment, where such preferences exceed in amount one-third of the assets of the assignors, after making the deductions mentioned in the act, renders the assignment void. In considering this question it will be for the present assumed that the judgments in favor of Moses and Herts Bros. & Co., and the transfer of accounts to Sonneborn, constituted preferences exceeding the statutory limit. These alleged unlawful preferences furnish the only ground upon which upon the evidence the validity of the assignment can be assailed. There were no facts shown upon which any common-law fraud could be predicated, or to bring the case within the statute as to fraudulent conveyances (2 Rev. St. 137, §§ 1–8). It is not claimed that the assignors withheld any of their property from their creditors. It was formally admitted on the trial that the debts for which the judgments were obtained, and the debt of Sonneborn, were *bona fide.* The only ground of attack upon the assignment and the other transactions mentioned, is that the assignors, in contemplation of the assignment, promoted a scheme by which certain creditors holding just and valid debts were given preferences exceeding the statutory limit, and that the creditors had knowledge at the time that a general assignment was contemplated. The assignors in giving such preference violated no rule of the common law. The giving of such preference was not a hindering, delaying or defrauding of their other creditors, as these terms have been uniformly understood and interpreted. Whether under the statute of 1887, an exces-

sive preference makes an assignment wholly void has not been hitherto decided in this court. The cases of *Berger* v. *Varrelmann* (127 N. Y. 281), and *Spelman* v. *Freedman* (130 id. 421), were actions by creditors in aid of a general assignment to set aside preferences exceeding the statutory limit and for an accounting by the preferred creditors to the assignee for the proceeds collected or received by them. The actions assumed that the assignments to which they related were not invalidated, but only the preferences. The question whether an excessive preference made the assignment void or only affected the preference, was not decided in either of the cases mentioned. In *Manning* v. *Beck* (129 N. Y. 1), this court reversed a judgment setting aside a general assignment and an alleged preferential transfer, in an action brought by a judgment creditor of the assignor, on the ground that the creditor who took the bill of sale from the insolvent had no knowledge at the time that a general assignment was contemplated. Judge PECKHAM, in his opinion, carefully reserves the question of the effect of an excessive preference on the assignment, and the further question, whether such preference affects the whole claim of the preferred creditor, or only makes it subject to reduction within the statutory limit. These questions, therefore, being *res nova*, must be decided in view of the language and policy of the act of 1887. The object of the act is plain and unmistakable. It was intended to insure to the general body of the creditors of an insolvent debtor upon a transfer of his property by general assignment, the right of participation in the distribution of the debtor's property to the extent of at least two-thirds of the assets of the insolvent after certain deductions. In order to secure this result the act declares that " any preference " contained in a general assignment, other than for wages or salaries of employees, " shall not be valid except to the amount of one-third of the assigned estate left after deducting such wages or salaries and the costs and expenses of executing such trust." The statute operates upon the preference only, and not upon the assignment or the title of the assignee. It does not undertake to destroy or

affect the assignment except in so far as it provides for pref‍erences beyond the prescribed limit. When the preferences made exceed this limit, the statute intervenes and declares the consequence. It reduces the preference to the limit mentioned in the statute. The "preference" it declares shall not be valid "except" to the amount of one-third of the assets. The statute enacts a rule for the administration of the trust in case of preferences. It may not in many cases be known until the closing of the trust and the ascertainment of the amount due for wages and salaries, and the expenses of administration, whether the preferences exceed the statutory limit. Creditors may or may not know in advance that they are to be preferred, and if they know that preference is intended they may or may not know the amount of the assets, or whether the intended preference exceeds the statutory limit. They do know the rule, and other creditors are not defrauded by a preference in excess of the one-third. The statute, we think, only operates to scale down the preference, if in excess. This construction accomplishes the purpose of the statute.

The consequences which follow from the theory upon which this case was decided, viz., that an excessive preference makes the assignment absolutely void, where the assignors and the preferred creditors are cognizant when the assignment is made or securities taken operating as a preference, that the preference exceeds the statutory limit, would involve great inconsistency. Such a rule would defeat the purpose of the statute, and enable a creditor, who by reason of the maturity of his debt or favorable circumstances enabling him to commence his action earlier than other creditors, to appropriate the property of the insolvent to the payment of his debt, to the exclusion of the other creditors. The violation of the act of 1887 would be the very circumstance which would enable him to exclude other creditors from sharing in the assets. The present case is an apt illustration. The plaintiffs complain that the assignors have given preferences in excess of the statutory limit, thereby depriving the general body of creditors of participation in the insolvent's property, intended

to be secured by the statute of 1887. Thereupon they claim, and the judgment awards to them, nearly the whole available property of the assignors, to be applied to the satisfaction of their debts exclusively, wholly ignoring the rights of the other creditors. We are of the opinion that the judgment proceeds upon an erroneous view of the statute. An assignment is not, we think, invalidated because it provides for preferences exceeding the statutory limit. Nor, in our opinion, does an excessive preference deprive the party preferred of all benefit of the preference. The statute, and not the direction in the assignment, is, in such a case, the rule by which the assignee is to be guided in administering the trust. The preference is to be reduced so as to make it conform to the statutory limit, and is not annihilated. And if the statute is violated by an excessive preference, the right of creditors can, we think, only be asserted by the assignee or by an action in aid of the assignment for the benefit of the body of creditors, as in the case of *Spelman* v. *Freedman (supra)*.

But the assumption which has been made that the judgments in favor of Moses and Herts Bros. & Co., and the transfer of accounts to Sonneborn constituted preferences within the act of 1887, is not sustained by the record. The judgments, though entered on the same day on which the assignment was executed and filed, were subsequent in fact, and the property vested in the assignee who took possession under the assignment before the judgments were entered or the executions issued. The entry of the judgments was intentionally postponed until after the execution and filing of the assignment. It was disclosed by the evidence introduced by the plaintiffs that the assignors refused to permit the judgments to be entered so as to give them priority over the assignment; " they were to stand like all creditors; whatever value a judgment gave them after the assignment, they were to have, but no other value." The case of *Berger* v. *Varrelmann (supra)* is authority for the proposition that a preference, within the act of 1887, may be obtained through separate instruments executed before, but in contempla-

tion of, the execution of a general assignment. But it is legally impossible that a preference can be created by the confession of a judgment made and entered after the assignment is executed and filed and the assignee has taken possession of the assigned property, and the fact that but a few moments intervened between the two transactions can make no difference. The finding that the execution of the assignment and the entry of the judgments were parts of a scheme to create an unlawful preference does not alter the fact that the sequence of events made the scheme impossible of execution. The levy and sale of the property on the executions were in hostility to the rights of the assignee, and he brought an action for the conversion of the property. It so happened that chap. 294 of the Laws of 1888 went into force July 1, 1888, the day before the execution of the assignment, whereby it was required that in all general assignments the assignor should state his residence and the kind of business carried on by him. It was held by the Court of Common Pleas in the city of New York, in the case of *Bloomingdale* v. *Seligman et al.* (22 Abb. [N. Cas.] 98), which was another attack on the assignment now in question, that the non-compliance with the act of 1888 rendered the assignment void, and the suit brought by the assignee for the levy and sale of the property under the judgments of Moses and Herts Bros. & Co. was thereupon discontinued. This court, in *Dutchess Mut. Ins. Co.* v. *Van Wagonen* (132 N. Y. 398), held that the omission to comply with the act of 1888 did not invalidate an assignment. In this case it is true that the assignors promoted the securing of the judgments. But in so doing they violated no rights of the creditors. The judgments were for valid debts, and they were not suffered to be entered until the right of the assignee under the assignment had become vested and perfect. The judgments and executions constituted and could constitute no preference under the act of 1887. If no assignment had been made the judgments could not have been assailed by the other creditors, (*Manning* v. *Beck*, 129 N. Y. 1), and having been entered

after the assignment, the other creditors have no ground for complaint. We can perceive no way in which Moses and Herts Bros. & Co. can be compelled to account for the proceeds of the property sold on the executions, except in an action brought by the assignee, or in his right, asserting title under the assignment. Assuming, as we must, that the property sold under the judgments and executions of Moses and Herts Bros. & Co. belonged to the assigned estate, it was not made to appear that the accounts assigned to Sonneborn exceeded in amount one-third of the assets of the insolvents, after making the deductions specified in the act of 1887.

These views lead to a reversal of the judgments of the Special and General Terms and the granting of a new trial.

All concur.

Judgments reversed.