### DETERMINED IN THE

# FIRST DEPARTMENT

### AT

## GENERAL TERM,

## June, 1894.

---

JACOB LONDON and Another, Appellants, *v.* WILBUR F. MARTIN and Others, Respondents.

*Right of a failing debtor to prefer creditors — action to set aside transfers of property by a debtor — contradiction between the findings and the decision.*

A failing debtor may practically prefer any of his creditors to as great an extent as his property permits, provided he does it by giving mortgages and bills of sale, or confessing judgments, instead of expressing such preference in the terms of a general assignment for creditors, which the statute alone condemns.

A trial judge made, at the request of one of the parties, findings which, if supported by the evidence, would require a determination that certain transactions were fraudulent, but the court, in fact, decided that the transactions complained of were honest and fair.

*Held,* that such findings, not being authorized by the evidence, did not require a reversal of the judgment.

APPEAL by the plaintiffs, Jacob London and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 21st day of November, 1893, upon the decision of the court rendered after a trial at the New York Special Term.

*E. J. Myers,* for the appellants.

*Benjamin H. Baylies, J. C. Cloyd, Wm. J. Underwood* and *Wm. F. Thacher,* for the respondents.

PARKER, J.:

After the evidence of both parties had been presented to the court, it reached the conclusion that the assignment, which this

action was brought to set aside as fraudulent and void as against the creditors of the assignor, was, in fact, made and executed by the debtor, with the honest intent and purpose of providing that his estate should be appropriated in payment, so far as the same would go, of all his debts.

The findings of fact made by the court as the basis upon which it founded its conclusions of law entirely justify them, and had the trial judge stopped there not a single question would have been presented which would have even justified the appellants in presenting an argument thereon to an appellate court. But, at the request of the plaintiffs' counsel, the court made some findings, inadvertently, as we think, which, without explanation and additions, would have required a different conclusion. Findings, which, if supported by the evidence in the form in which they are made, come within the rule established in *Coleman* v. *Burr* (93 N. Y. 17), and require a determination that the inference of fraud was inevitable from the facts found, notwithstanding the finding of the trial court that the transactions complained of were honest and fair. These findings read as follows :

"*Fourth*. That on the 27th day of October, 1891, Wilbur F. Martin made and executed to George S. Martin a bill of sale of his stock of merchandise in trade of his business in the city of New York, for the alleged consideration of eighteen hundred dollars ($1,800), no part of which was paid.

"*Fifth*. That the consideration of $1,800, named in the bill of sale, was to be paid by the said George S. Martin to the said Wilbur F. Martin out of the proceeds of the sale of the said merchandise, as they should from time to time be made.

"*Sixth*. That on the 27th day of October, 1891, Wilbur F. Martin made and executed his certain bond to Adam C. Martin, as executor of Hannah S. Martin, deceased, to secure the payment of the sum of six thousand dollars ($6,000) one year after the date thereof.

"*Seventh*. That on the 27th day of October, 1891, Wilbur F. Martin made and executed a mortgage, dated the 27th day of October, 1891, upon the certain premises No. 223 West Forty-ninth street, New York city, belonging to him, to secure the payment of the above-mentioned bond; which mortgage was recorded in the

office of the register of the city and county of New York on the 27th day of October, 1891.

"*Eighth*. That on the 27th day of October, 1891, Wilbur F. Martin assigned to Adam C. Martin, as executor of Hannah S. Martin, deceased, the bond and mortgage of Emma J. Schober, made to secure the payment of $4,400, upon which the sum of five hundred dollars ($500) had been paid.

"*Ninth*. That Wilbur F. Martin contemplated making an assignment on the 26th day of October, 1891, and, as part and parcel of such assignment, intended to prefer certain of his creditors.

"*Tenth*. That Wilbur F. Martin consulted with his counsel, Mr. Cloyd, and, upon his advice, made the bond and mortgage and assignment of bond and mortgage to Adam C. Martin, and bill of sale to George S. Martin, at the same time and session that the general assignment was made.

"That all of the said papers were part and parcel of one scheme to prefer certain creditors and make a general assignment by the said Wilbur F. Martin for the benefit of his creditors.

"*Eleventh*. That at the time of the making of the said assignment Wilbur F. Martin had other personal property, consisting of household furniture and chattels and money in bank, which the said Wilbur F. Martin appropriated to his own use, and which he, at the time of making such assignment, had no intention of conveying in and by said assignment.

"*Twelfth*. That the intention of the said Wilbur F. Martin was to exclude from the operations of his assignment, by means of bonds and mortgages and assignments of mortgages, the premises No. 223 West Forty-ninth street, and the bond and mortgage so assigned to Adam C. Martin; and further, the stock and merchandise in trade then in possession, by transferring the same to George S. Martin by the bill of sale aforesaid.

"*Thirteenth*. That Wilbur F. Martin only intended to transfer for the benefit of his creditors, by the general assignment, the accounts due . him by sundry debtors created and made in his business."

"*Fifteenth*. That the transfer of the stock in trade by the bill of sale by Wilbur F. Martin to George S. Martin, was made for the purpose of preventing the creditors reaching the said stock in trade,

and to prevent such stock in trade from passing under the general assignment."

"*Seventeenth.* That the mortgage and assignment of mortgage made by Wilbur F. Martin, aforesaid, were recorded by Mr. Cloyd on the 27th day of October, 1891; and the general assignment made at the same time with the aforesaid mortgage and assignment of mortgage was recorded on the 28th day of October, 1891.

"*Eighteenth.* That the bill of sale of the stock in trade made by Wilbur F. Martin to George S. Martin was made and delivered at the same time with the several other papers.

"*Nineteenth.* That the transfer of the stock in trade made by Wilbur F. Martin was made for the purpose of placing the same beyond the reach of his creditors.

"*Twentieth.* That the said Wilbur F. Martin was wholly insolvent at the time of the transfers made by him aforesaid.

"*Twenty-first.* That the indebtedness of Wilbur F. Martin on the 27th day of October, 1891, amounted to the sum of over forty-one thousand ($41,000) dollars; and that the amount of money which Elwood Donnelly, the assignee, has collected on the      day of      , 1893, amounts to the sum of not over $6,000.

"*Twenty-second.* That the property so assigned and transferred by the said Wilbur F. Martin, by the instruments hereinbefore mentioned, included all of the property of the said Wilbur F. Martin, and deprived him of the means of paying or satisfying the claims of these plaintiffs in part or in whole."

It was our first impression that these findings called for a reversal of the judgment, but an attentive examination of the evidence has persuaded us that a number of the findings, while containing a grain of truth, yet, by reason of things omitted, really state an untruth. Briefly as may be, we shall present the reasons why we think the judgment should not be reversed, notwithstanding these findings. In the first place let us speak of findings 6, 7, 8, 9 and 10.

It was not questioned on the trial, indeed, it was admitted, that Wilbur F. Martin was, and for many years had been, indebted to the estate of which Adam C. Martin was the executor, in the sum of $6,000. Upon the trial the assignor frankly admitted that his purpose in executing the bond and mortgage upon the property upon which he resided, and in assigning, as further security, the Schober

bond and mortgage, was to secure beyond all hazard payment of this just debt; and that at the time of executing these papers he knew that he would be obliged to make a general assignment for the benefit of his creditors. Of his intention in that regard Adam C. Martin, the executor, had no knowledge whatever. Indeed, he received the securities before he knew that his brother contemplated making an assignment.

It appears now that he decided wisely in securing his mother's estate by means of bonds and mortgages, rather than by preferring the estate in the general assignment. The sum realized has been so small that the statute limiting the amount of preferences would have operated to cut down the amount which the assignee would have been able to pay the executor to a sum far less than that actually due. But we need not concern ourselves with that fact, nor with a discussion of any of the interesting questions which have been presented by a similar state of circumstances, for they were put at rest by the decisions of *Spelman et al.* v. *Freedman* (130 N. Y. 421); *Central National Bank* v. *Seligman* (138 id. 435); *Abegg* v. *Bishop* (142 id. 286).

A failing debtor may now practically prefer his creditors to as great an extent as his property permits, provided he does it by giving mortgages and bills of sale, or confessing judgments, instead of putting it in the general assignment, which it is said the statute alone condemns.

We pass these findings then to consider the fourth, fifth, fourteenth, sixteenth and seventeenth. They assert in substance that on the morning preceding the execution of the general assignment the assignor executed and delivered to George S. Martin, a nephew, a bill of sale of the merchandise on hand in consideration of $1,800 which was not then paid, but was to be thereafter paid out of the proceeds of the merchandise as it should be realized, and that the transfer was made for the purpose of preventing the creditors from reaching the stock in trade and to prevent it from passing under the general assignment.

The impression actually created by the reading of the findings, or the summary of them, which we have just made, is that the assignor attempted, through this bill of sale, to secure for his own

benefit the value of this merchandise, and to prevent creditors from receiving either it or the proceeds. But such was not the fact. The assignor was a butcher, and when he went to consult his counsel with reference to making an assignment he informed him that it was his purpose to secure his mother's estate by giving to the executor thereof a bond and mortgage on his property, and assign as further security a bond and mortgage of which he was then the owner, and that it was his desire to devote all the remainder of his property to the payment of his creditors without preference. The question was then suggested by one of the parties to the conference, whether, owing to the perishable nature of the meat, it would be prudent to await disposition of it until after the assignee should be able to give the requisite security and enter upon the discharge of his duty. It was decided that if such course should be taken it would result in a comparatively severe loss, as the meat on hand was estimated to be of the value of $1,800. So counsel advised his client to sell the meat to George S. Martin, who then and for many years previously had been employed in the market, and charge it to him on the books, so that when the assignment should be executed it would carry with it instead of the meat a claim against George S. Martin for its value.

The assignor testified that, in pursuance of such direction, he made a sale to his nephew, at the same time making an entry or charge upon the books to him of the sale. And that this transfer was made and the entry made in the books prior to the execution of the general assignment.

This, it will be observed, is quite a different transaction than that which is suggested by the findings about which we are now inquiring. Supplementing those partial findings with the facts to which we have alluded, as is our duty in support of the judgment, it is at once apparent that if the judgment is to be reversed some other ground must be found upon which to predicate it.

The other suggestions of wrongdoing in respect to the assignor's estate relate to his disposition of household furniture and money in bank, and are referred to in the eleventh and thirteenth findings.

At the time of the assignment all the furniture in his house was worth about $1,000. It was all old furniture, some of it being the special property of his wife and children. Some of it he claimed as

his own, but what its value was is not disclosed, nor can we tell whether it was exempt under the exemption laws of the State.

The assignor testified that he supposed that his family and not his creditors were entitled to this furniture, that it belonged to the family. No special point was made of it on the trial, and the evidence respecting it is not in an entirely satisfactory condition, but it induces the belief that the assignor fully intended to devote all the property he had for the benefit of his creditors.

The assertion in the eleventh finding, that the assignor had money in the bank which he had no intention of conveying, referred to an item of forty-three dollars, which he had on deposit in the Chatham Bank, which was not the bank in which he kept his principal account. The assignor testifies that he intended to include it in his assignment but forgot it; a month or so later he was informed by the bank that the account should be closed, and thereupon he drew the money and used it.

There is no other evidence on the question, and it does not justify the setting aside of an assignment which distributes the assignor's estate among all his creditors without preference, for, whatever the fate of the general assignment, the bonds and mortgages given to secure the estate of his mother cannot be affected.

The judgment should be affirmed, with costs.

O'BRIEN and FOLLETT, JJ., concurred.

Judgment affirmed, with costs.