SELIG MAASS et al., Appellants, *v.* ABRAHAM FALK et al., Respondents.

The firm of F. Bros. & Co. being indebted to certain banks on promissory notes not yet due, and being in financial trouble, advised the banks of that fact, and entered into an agreement with them, in pursuance of which the banks surrendered the notes and received in place thereof the firm notes payable on demand, also an instrument in writing, by the terms of which the firm transferred to the banks as security all its stock in trade and fixtures, with authority to hold and sell the same and apply the net proceeds to the payment of the notes; any surplus to be paid over to the firm or its assigns. The banks took immediate possession of the property so transferred, sold the same and applied the net proceeds

ratably to the payment of the notes, such proceeds not being sufficient to pay the whole indebtedness. In an action by certain judgment creditors of the firm to set aside the transfer as being fraudulent and void against creditors these facts appeared: On the next day after the transaction said firm executed to other creditors various similar transfers which, as a whole, covered all the remaining property of the firm. These transfers bore the same date as the one in question. No general assignment for the benefit of creditors was made by the firm. The trial court found that at the time of the transfer and delivery of the property to the banks neither of them had any knowledge of any other transfer or intended transfer by the firm, and that the transaction was without intent to hinder, defraud or delay creditors. *Held*, that the complaint was properly dismissed; that so far as the evidence disclosed there was no relation or connection between the transaction with the banks and those with other creditors, and so they could not be considered as one and the same transaction, and there was no violation shown of the prohibition of the General Assignment Act (§ 30, chap. 503, Laws of 1887) prohibiting preferences in such an assignment exceeding one-third of the value of the assigned estate.

*It seems*, that had there been a general assignment by the firm, and the transaction with the banks constituted an undue preference, plaintiffs' action was not the proper remedy; that instead of an action in their own behalf, it should have been in behalf of all the creditors excluded by the transfers from a share in the debtors' assets, to secure to them a ratable distribution of two-thirds thereof.

(Argued April 18, 1895; decided April 30, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 12, 1893, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term dismissing the complaint.

This is an action by certain judgment creditors of the firm of Falk Brothers & Co. to set aside, as being void and fraudulent as to them, a certain transfer of property, which had been made by the judgment debtors to the three defendant banks. The instrument of transfer referred to in the complaint, after reciting the indebtedness of Falk Brothers & Company to the three banks, proceeded to transfer to the banks all the goods, wares and merchandise, stock in trade and fixtures of Falk Brothers & Co. in their store, " to have and to hold to the said

banks as security for the said indebtedness to them respectively, with authority to the said banks to hold and sell the same at public or private sale  *  *  *  and after payment of the expenses of such sales and the said indebtedness to said banks, with interest in full, or ratably,  *  *  *  to render the overplus to said firm or its assigns." That instrument was made and dated on the 27th day of March, 1891, and under the following circumstances : The firm was indebted to the three defendant banks upon promissory notes in sums of money aggregating $88,832. In the evening of March 27th, 1891, one of the firm of Falk Brothers & Company had a meeting with the representatives of the three banks at the house of his counsel; the banks having been informed that the firm was in financial trouble, through their Southern house. None of the promissory notes held by the banks were then due ; but it was agreed that they should all be surrendered to the firm and that each bank should take back, in satisfaction of the notes surrendered, a note for the amount owing to it upon the notes surrendered, less the rebate of interest for the time they had to run. The payment of the three new notes was to be secured by a mortgage upon certain personal property belonging to the firm. That agreement was immediately carried into effect by the execution and delivery of three promissory notes to the three banks, payable on demand, with interest; by the surrender and satisfaction of the old notes and by the execution and delivery of the instrument above mentioned. The banks took immediate possession of the property mentioned in the instrument of transfer and in pursuance of its authority sold the same and applied the proceeds, ratably, to the payment of the amount owing to each upon their notes. The proceeds of the sale, after deducting expenses, were not quite sufficient to satisfy the indebtedness to the banks. It further appears that, upon the day following this transaction with the banks, the firm of Falk Brothers made several assignments to certain other of their creditors of various claims and accounts and they assigned to one of their firm, " as guardian,". the overplus, if any, mentioned in

each of such assignments, to pay the amount of an indebtedness mentioned. As the result of the transfers effected by all of these instruments, all of the property of Falk Brothers & Co. was appropriated to the discharge of their indebtedness to the particular creditors described. It was found as a fact by the trial court, that, at the time of the acceptance of the demand notes and the execution of the instrument in question and the delivery of the possession of the property therein contained, none of the defendant banks had any knowledge or notice of any other transfer, or intended transfer, of any property or assets by the defendants Falk. It was also found as a fact, that no general assignment of the estate of the defendants Falk, for the benefit of their creditors, was made by them; that the agreement between the defendants Falk and the three banks, and the transaction between them in pursuance of such agreements, were without any intent to hinder, or defraud, or delay the plaintiffs, or any creditor of the defendants Falk. The complaint was dismissed upon the merits at the Special Term and upon appeal to the General Term the judgment entered upon that dismissal was affirmed.

*Isaac H. Maynard* for appellants. The several instruments executed by the Falks and dated March 27, 1891, were, within the meaning of the law, a general assignment and, therefore, void, because not executed in conformity with the statute relating to general assignments for the benefit of creditors, and also because they secured to the creditors in whose favor they were executed a preference prohibited by the statute. (*U. S.* v. *Clark*, 1 Paine, 629; *Moore* v. *Church*, 70 Iowa, 208; *Winner* v. *Hoyt*, 66 Wis. 204; *White* v. *Cotzhausen*, 129 U. S. 329; *Tillon* v. *Britton*, 4 Halst. 138; *Horn* v. *Keteltas*, 46 N. Y. 605; *King* v. *Gustafson*, 80 Iowa, 207; *Sutherland* v. *Bradner*, 116 N. Y. 410; *Goodrich* v. *Downs*, 6 Hill, 438; *Barney* v. *Griffen*, 2 N. Y. 365; *Collomb* v. *Caldwell*, 16 id. 484; *Leitch* v. *Hollister*, 4 id. 211; *Knapp* v. *McGowan*, 96 id. 75; *Rogers* v. *Rogers*, 111 id. 228; *Bundy* v. *Bundy*, 38 id. 410; *Wetmore* v. *Truslow*,

51 id. 338; *Woodward* v. *James,* 115 id. 346; *Brown* v. *Chubb,* 135 id. 179; *Franklyn* v. *Haywood,* 61 How. Pr. 43; *Smith* v. *Roberts,* 91 N. Y. 470; *Sheldon* v. *Edwards,* 35 id. 279.) The transfers were a fraud upon the statute governing assignments. (*White* v. *Cotzhausen,* 129 U. S. 329; *Fields* v. *Geoghegan,* 125 Ill. 70; *Berger* v. *Varrellman,* 127 N. Y. 281; *Manning* v. *Beck,* 129 id. 1; *Spellman* v. *Freedman,* 130 id. 421; *Jones* v. *Howland,* 8 Metc. 377; *Power* v. *Allston,* 93 Ill. 587.) The finding of the trial court that the banks were ignorant of any further proposed transfer by the Falks is unsupported by the evidence. (*Parker* v. *Conner,* 93 N. Y. 118; *Vosburgh* v. *Diefendorf,* 119 id. 357; *Bank* v. *Diefendorf,* 123 id. 191; *King* v. *Doane,* 139 U. S. 166; *Lansing* v. *Stewart,* 104 id. 505; *Hale* v. *Shannon,* 57 Hun, 466; *Smith* v. *Livingston,* 111 Mass. 342; *Clements* v. *Moore,* 6 Wall. 299.) As the moneys received by the banks were received in pursuance of a scheme to obtain an illegal preference, the banks should be compelled to account to the plaintiffs for the entire proceeds of the sale. (*C. N. Bank* v. *Seligman,* 64 Hun, 615, 619.)

*S. B. Brownell, J. B. Talmage* and *Charles Strauss* for respondents. Upon the findings this is the simple case of a debtor agreeing with his creditor to further secure his indebtedness by a chattel mortgage without any element of fraud or circumstances from which fraud can be inferred. (*Manning* v. *Beck,* 129 N. Y. 1; *White* v. *Cotzhausen,* 129 U. S. 329; *L. S. B. Co.* v. *Fuller,* 110 Penn. St. 156; *Abegg* v. *Bishop,* 142 N. Y. 286; *C. N. Bank* v. *Seligman,* 138 id. 441.) No element of trust was contained in the grant to the banks. The title to the property vested in the banks only to the extent and for the purpose for which it was granted, viz., as security for the payment of the indebtedness to them respectively. Such provision never hinders creditors, because they may pay the mortgage debt and take the property or fasten on the surplus. (*Brown* v. *Guthrie,* 110 N. Y. 441, 442; *Greene* v. *Greene,* 125 id. 506.)

*B. F. Einstein* for respondents. The respondents, Falk Bros. & Co., as debtors, had the legal right to give a prefer. ence directly to their creditors, as was done in this case, in good faith, and this right which they had at common law was in no wise affected by the General Assignment Act of 1887. (*Manning* v. *Beck,* 129 N. Y. 1; *C. N. Bank* v. *Seligman,* 138 id. 441; *Abegg* v. *Bishop,* 142 id. 286.)

GRAY, J. I am not disposed to dispute the proposition of the appellants, which has been so ably argued by their counsel. If the transactions between the firm of Falk Brothers & Co. and the creditors of that firm, which resulted in transfers of all the firm property, had been simultaneous and it was plain that, in their guise, the debtor firm had, in fact, made a general assignment to favored creditors, then I should consider that there had been a violation of the provisions of the statute, regulating the assignments of the estates of debtors for the benefit of their creditors. The prohibition of the act of 1887 (Chap. 503, N. Y. Session Laws, sec. 30) against the creation of preferences, except to the amount of one-third in value of the assigned estate, cannot be evaded by resort to instrumentalities, which, however independent, are merely parts of a plan, through which certain creditors secure a preference in payment and the distribution of the debtor's assets as intended by the statute is prevented. Such a scheme between a debtor and some of his creditors would be as intolerable an evasion of the statute, as would be a transaction where the particular instrumentality, resorted to between the parties to secure the undue preference, was a transfer of property made independently, but in contemplation of a general assignment. If it were the fact that the defendant banks knew of their debtors' intention subsequently to accomplish an assignment of their whole estate to favored creditors, then we might regard the transaction with them, on the evening of March 27th, as one of the instrumentalities for evading the statute and for working a fraud upon creditors. But there was no ·general assignment under the statute by the Falks and the

finding to that effect is in accord with the facts of the case; although, as a matter of fact, through the various transfers, the debtors have disposed of all of their property.

The evidence does not bear out the plaintiffs' proposition, nor establish the existence of any scheme as between these banks and Falk Brothers. Before discussing that part of the case, I may observe that if it were true that the transaction with these banks constituted an undue and illegal preference and there was, as it is also in substance alleged and as it has been argued, a general assignment by the debtors Falk of their property, which was in evasion of the statute and in violation of its provisions simply because creating preferences contrary to the provisions of the statute, then the plaintiffs have not pursued, in my judgment, the proper remedy. In such a case they should come into the court and ask its equitable aid to secure to themselves and the other creditors, who were excluded by these instruments from a share in the debtors' assets, that ratable distribution of two-thirds thereof, which the act of 1887 intended they should in all events have. Otherwise they would by reason of their judgments obtain a preference in the payment of their debts, which they complain of as having been given by the debtors to other of their creditors. That is a position which a court of equity could not regard with any favor. The purpose of the statute is to prevent any preference, other than that for wages or salaries of employés, beyond one-third of the assigned estate and if that amount is exceeded, the penalty is not the annihilation of the assignment, but the reduction of the preference to the prescribed limit. (*Central National Bank* v. *Seligman*, 138 N. Y. 435.) Where that is the condition of affairs under a general assignment of the debtor's property, the remedy of creditors aggrieved by their debtor's act is by an action in aid of the assignment for the benefit of the body of creditors; if their rights are not asserted by the assignee. (*Spelman* v. *Freedman*, 130 N. Y. 421; *Bank* v. *Seligman, supra; Abegg* v. *Bishop*, 142 N. Y. 286.) In such a case the maxim *vigilantibus et non dormientibus jura sub-*

*veniunt* cannot be invoked. It has application in cases where it is the policy of the law to reward enterprise and to punish indolence and negligence. It is needless to observe that it cannot⁻ be the policy of the law to encourage an activity, which would defeat one of its principal objects. But the difficulty with this case is that it is not borne out by the facts. Although the various instruments of transfer between the Falks and the defendant banks and between them and their other creditors, all, bore the same date, as matter of fact the transaction with the banks, alone, took place on the 27th of March, 1891; while the transactions with the other creditors were upon the succeeding day. So far as the evidence discloses, there was no relation, nor connection, between the transaction with the banks and that with the other creditors on the following day. None can be inferred from the similarity of the dates. The finding of fact was that at the time of the transaction none of the banks had any knowledge, or notice, of any other transfer, or intended transfer, of any property by the Falks. There is nothing in the evidence which shows, or tends to show, that knowledge and the burden upon the plaintiffs to give such proof was never shifted upon the defendants. The argument in answer assumes that the plaintiffs had shown that when the Falks executed their transfer to the banks, they contemplated insolvency and an evasion of the statute respecting assignments and that, therefore, it was for the defendants to prove their innocence of any participation in such a scheme. The assumption is wrong not only in the facts, but in the law. The proof simply showed that the Falks, finding themselves financially embarrassed, hastened to secure their indebtedness to the three banks upon the unmatured notes and accomplished it by taking up the existing notes and giving therefor notes payable on demand; payment of which was secured by a transfer or pledge of property; under the terms of which the banks were enabled to proceed, immediately, to take possession of the property covered and, by a sale, eventually, to satisfy nearly all

their indebtedness. There is not a word, nor an incident, to show that, at the time of this transaction, the Falks intended anything more than to secure the banks against loss upon the notes held. Whether they had in mind, at the time, the making of further transfers, afterwards; or whether that idea occurred to them subsequently does not appear and it is immaterial to the issue. The transaction was one to secure the payment of a valid and subsisting indebtedness and if the defendant banks were ignorant of any intention of their debtors to follow up the transaction by divesting themselves upon the next day of all control over the balance of their property, they cannot be said to have been participants in any scheme for the violation, or evasion, of the statute. The finding is explicit upon the question of knowledge and the case, therefore, in that aspect, and as one where the creditor simply obtains security for the payment of his honest debt, comes within the authority of *Manning* v. *Beck* (129 N. Y. 1). In that case the question was whether a creditor who procures a bill of sale from an insolvent debtor in payment of, or as security for, an honest and subsisting debt, and in ignorance of any intention on the part of the debtor to make thereafter a general assignment, can hold it as against the world; even though the property passing under the bill of sale exceeded one-third of the assets of the vendor. There a father transferred to his son, to whom he was indebted, a stock of goods and fixtures in a store by a bill of sale, in payment of the indebtedness. The next day the father made an assignment for the benefit of creditors to an assignee. The son knew that his father was insolvent, but did not know that he intended to make a general assignment. The preference thus intentionally given to the son was upheld. It was said that "the statute does not and was not intended to prevent a creditor from obtaining payment of, or a security, and thereby a preference, for his debt, even from an insolvent debtor and when a court is asked to set aside a security which is disconnected from and prior to any general assignment, on the ground that it is in violation of the act in relation to prefer-

ences in general assignments, it at once becomes a question whether the act was ever intended to cover a case, where the creditor * * * was ignorant of any existing intention on the part of the debtor to thereafter perform an entirely separate act and make a general assignment. It does not, in terms, cover such a case, and we think it should not be thus extended by construction." The decision in *Manning* v. *Beck* is carefully reasoned out and shortens a discussion upon questions which were there considered.

In view of the findings and upon the evidence, the transfers of property to the defendant banks and to the other creditors cannot be regarded as constituting one transaction, or having one and the same general object. In the case of the debtors, there is nothing but surmise upon which an inference can be rested of an intention to evade the statute by preferring certain creditors through a series of separate assignments or transfers of property; while as to the defendant. banks, there is no evidence to charge them with knowledge of any such intention, if it existed, and there is the express. finding that they had no knowledge of any other intended. transfer of property by the Falks.

The position of the appellants is weak in several respects.. It incorrectly assumes that all the instruments were simultaneously executed. It regards the transfer of the property to. the defendants as a mere trust assignment; whereas it was. actually a pledge or mortgage of the property as security for an existing indebtedness. It assumes that the Falks made the transfer in contemplation of insolvency and with a design to evade the statute, without any evidence upon which the assumption might rest. It assumes the existence of evidence tending to prove as a fact an intention to hinder, delay and defraud creditors; when there was none, unless by treating the transfer to the defendants on March 27th and the subsequent transfers to other creditors upon the following day as one transaction; which, because preferring certain creditors. to the extent of all their property, was in violation of law, or,, as it is said, " a fraud upon the statute."

I think it needless to pursue further a subject, which in recent and successive decisions has been in effect covered by their discussions, in its several phases. (See *Berger* v. *Varrelmann*, 127 N. Y. 281; *Manning* v. *Beck*, 129 id. 1; *Central Bank* v. *Seligman*, 138 id. 435, and *Abegg* v. *Bishop*, 142 id. 286.)

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.