(22 App. Div. 258.)

SHOTWELL v. DIXON et al.

(Supreme Court, Appellate Division, Third Department. November 10, 1897.)

1. INSOLVENCY—PREFERENCES—EXTENT.
   An insolvent debtor may prefer his creditors to as great an extent as his property permits, provided such preferences are not made as part of a general assignment for the benefit of creditors.

2. SAME—FRAUDULENT INTENT—KNOWLEDGE OF CREDITOR.
   Laws 1887, c. 503, § 30, limiting the amount of preferences in a general assignment for the benefit of creditors to one-third in value of the assignor's estate, does not invalidate preferences in a greater proportion, made by an insolvent debtor, who at the time intends to make a general assignment, when the preferred creditors have no knowledge of such intention, though they know that their debtor is insolvent.

3. SAME—BURDEN OF PROOF.
   Where a creditor seeks to set aside preferences on the ground that they were unlawfully made in contemplation of an assignment for creditors, the burden is on him to show that the preferred creditors had knowledge of the debtor's purpose to assign.

4. SAME—EVIDENCE.
   Preferred creditors of an insolvent debtor, though they had knowledge of the latter's condition, cannot be charged with knowledge that he unlawfully intended such preferences as part of a general assignment, when such knowledge is not shown to have existed, and a lawful intent was just as probable as the unlawful one.

5. SAME.
   The fact that a preferred creditor is the father of a member of the insolvent debtor firm, and an indorser of notes made by him, does not impute to him knowledge that when they made the preference they intended to make a general assignment.

6. SAME—PLEADING AND JUDGMENT.
   Where one seeking to set aside as invalid a preference made by an insolvent firm alleges the preferred claim to be a partnership debt, the holder thereof may rely upon such allegation, although the claim includes an individual claim against a member of the firm.

   Landon, J., dissenting.

Appeal from trial term.

Action by Samuel H. Shotwell against Baltie H. Dixon and others. From a judgment for plaintiff, certain defendants appeal. Reversed.

The defendants Baltie H. Dixon and George E. Wilkins, on the 30th day of December, 1895, were, and for six years prior to that time had been, engaged in the business of manufacturing gloves, and selling gloves, skins, and leather, at Mayfield, N. Y., under the firm of Dixon & Wilkins. At the time mentioned they were insolvent, and, with intent to prefer certain of their creditors, and to obtain the means to make such preferences, they sold nearly all their goods and property. To Littauer Bros. they sold gloves of the value of $5,082.50, on which a discount was allowed of $2,313.34. To Wood & Wilkins they transferred skins of the value of $3,424.38, allowing $1,673.38 on a debt owing to said firm, and receiving the note of Wood & Wilkins for $1,751, the balance. In payment of the gloves sold to Littauer Bros. that firm gave to Dixon & Wilkins, among other checks, the following: One payable to the order of Firmer W. Brown, for $236.87; one payable to Byron Brown, for $275; one payable to Edward S. Childs, for $210.95; and one payable to the order of Walter H. Dixon, for $357.86,—and which checks were delivered by Dixon & Wilkins to the said several payees, the appellants herein, in payment of their several claims against said firm. It is not alleged in the complaint that the several claims thus paid were not valid debts owing by Dixon & Wilkins. On the 30th day of December, Dixon & Wilkins also transferred to the appellant Walter H. Dixon, the father of

Baltie H. Dixon, the above-mentioned check of $357.86; another check, received from Littauer Bros., for $1,000; the note of $1,751, obtained from Wood & Wilkins; assigned to him accounts amounting to $4,600; and also gave him a mortgage on the real estate owned by the firm for $2,500,—thus preferring said Walter H. Dixon to the amount of $10,208.86. This transfer and security was given to the said Walter H. Dixon to pay a debt held by· him against Dixon & Wilkins of $2,800, and to pay two notes on which he was an indorser, and the payment of which he then assumed, viz. one note held by Booth & Co., for $4,537.64, and another note, owned by Richard Young, for $2,537.43; the claim of said Walter H. Dixon and the debts then assumed by him amounting to $9,875.07. It is not averred in the complaint that either of said claims thus owned or assumed by said appellant were not valid claims against Wood & Wilkins. It will be seen that they amount to $333.79 less than the apparent value of the security given and payments made to said Walter H. Dixon, but it was shown on the trial that the amount collected on the accounts assigned was much less than $4,600. The firm of Dixon & Wilkins, after making the above-mentioned preferential payments and transfers, on the next day—December 31, 1895—made a general assignment to the defendant Byron D. Brown, having at the time assets remaining in value less than $2,943. The plaintiff, a judgment creditor of said firm of Dixon & Wilkins, claiming that the several preferential payments and transfers to creditors above mentioned, and other payments and transfers made on December 30, 1895, were unlawful, and a part of the general assignment executed the next day, and made in furtherance of a scheme of said firm to pay certain favored creditors, and thereafter immediately make a general assignment, thus creating unlawful preferences, brought this action to set aside the various transfers, securities, and assignments above mentioned thus made by Dixon & Wilkins immediately before their general assignment, and to recover the sums paid out or received by such creditors, or the value of the property transferred, in order that the money and property to be recovered in such action should be brought in and distributed as part of the trust fund under said general assignment, for the benefit of all the creditors of said firm; the assignee having declined to bring such an action. The plaintiff obtained a judgment in the court below for the relief demanded, and the defendants Byron D. Brown, Walter H. Dixon, Edward S. Childs, and Firmer W. Brown have appealed to this court.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

R. P. Anibal, Clarence W. Smith, and D. H. McFalls, for appellants. N. M. Banker (Andrew J. Nellis, of counsel), for respondent.

PUTNAM, J. An insolvent debtor may prefer his creditors to as great an extent as his property permits by payments, assignments of choses in action, by giving mortgages, bills of sale, or confessions of judgment, or by any transfer of his property,—such preferences not being made in a general assignment by the debtor for the benefit of creditors. London v. Martin, 79 Hun, 229, 29 N. Y. Supp. 396; Knapp v. McGowan, 96 N. Y. 75; Claflin Co. v. Arnheim, 87 Hun, 236, 33 N. Y. Supp. 1037; Maass v. Falk, 146 N. Y. 34, 40 N. E. 504; Hoffman v. Susemihl, 15 App. Div. 405, 44 N. Y. Supp. 52; Gomez v. Hagaman, 84 Hun, 148, 32 N. Y. Supp. 453; Tompkins v. Hunter, 149 N. Y. 117, 43 N. E. 532. But it has been held that the provisions of section 30, c. 503, of the Laws of 1887, limiting the amount of preferences in a general assignment for the benefit of creditors to one-third in value of the assignor's estate, is not confined to the assignment itself, but applies to preferences created by separate instru-

ments in contemplation of the assignment. Berger v. Varrelmann, 127 N. Y. 281, 27 N. E. 1065. The case above cited was considered and distinguished in the opinion of Peckham, J., in Manning v. Beck, 129 N. Y. 1, 29 N. E. 90. In the case last cited the following facts appeared: The plaintiffs were judgment creditors of Louis P. Beck, and brought the action against him and William H. Beck and H. Israel Weinberg to set aside a bill of sale by Louis P. Beck to his son, William H. Beck, and an assignment for the benefit of creditors to the defendant Weinberg. It was shown that Louis P. Beck, on January 3, 1889, being indebted to his son to the amount of nearly $5,000, and being the owner of a stock of goods in a store, and the fixtures therein, on that day conveyed them all by a bill of sale to his son. The consideration therefor was an agreement of the son to take the goods described in it as payment of the debt due him, and his assumption of certain debts of the father, which he agreed to pay, and the payment of a small amount in cash to the father. At the time, William H. Beck knew that Louis P. Beck was insolvent. It appears from a statement of the facts in the case in Manning v. Beck, 54 Hun, 102–104, 7 N. Y. Supp. 215, that the property thus transferred to the son was substantially all the property of the assignor. In the case cited, therefore, it appears that William H. Beck, knowing that his father was insolvent, took a bill of sale of substantially all his estate in payment of his own debt and other debts, the payments of which he assumed. This bill of sale was dated on January 3, 1889, and the next day the general assignment was made to Weinberg, the assignor therein, before its execution, substantially devesting himself of all his property. It was held, however, by the court of appeals, that the provisions of chapter 503 of the Laws of 1887 did not prevent a creditor from obtaining payment of, or securing a preference for, his debt from the insolvent debtor; that, if he accepted a payment of or security for his debt with a knowledge that the debtor intended to make an assignment, and that the payment or security was made or given in contemplation thereof, and would result in a violation of the provisions of the statute, the payment or security would be illegal and void; but, if the creditor accepted the payment or security in ignorance of any such existing intent on the part of the debtor, the provisions of the act of 1887 did not apply, and the transfer was not made invalid by the fact that the debtor did thereafter make a general assignment. Judge Peckham, in his opinion, quotes with approval the following extract from the opinion delivered in Banking Co. v. Fuller, 110 Pa. St. 156, 1 Atl. 731, viz.:

"Nor can we agree that a mere intent of the debtor, unexpressed to the creditor, to give him a preference by paying or securing the debt, although he at the time contemplated, and soon after executed, a general assignment, operated to defeat such preference on the ground that it is contrary to the act of 1843. Such an intent is not unlawful, and cannot be inferred from a proper act. But, even if it were, the creditor, who has a perfect right to accept payment or security of his debt, and has not participated in the alleged unlawful intent, should not be compelled to forfeit his preference in that amount. He, at least, is innocent, and may in good conscience hold the advantage he has obtained."

The question in this case therefore is: Did the several appellants, when they received payment of or security for their debts against the firm of Dixon & Wilkins on the 30th day of December, 1895, know said firm intended to make a general assignment,—know that said payments or securities were intended by Dixon & Wilkins as an unlawful scheme to avoid the provisions of the act of 1887? It must be remembered that, if the evidence in the case is capable of an interpretation equally consistent with a lawful as with an unlawful intent, the former meaning must be given to it (Morris v. Talcott, 96 N. Y. 100); and also that the burden was upon the plaintiff all through the case to show the knowledge of the several appellants of the unlawful scheme of the assignors, if any existed (Maass v. Falk, 146 N. Y. 34–41, 40 N. E. 504). After a careful examination of the evidence contained in the case, we are unable to find a scintilla of testimony showing that the several appellants, respectively, although probably aware that the firm was insolvent, knew, when they received payment of or security for their claims, that Dixon & Wilkins intended to make a general assignment. Each of the appellants Firmer W. Brown, Byron D. Brown, and Edward S. Childs had small claims against Dixon & Wilkins. The transaction between such creditors and the firm was simply a payment of such claims by check of Littauer Bros. This was a lawful transaction, whether the firm was solvent or insolvent. If Dixon & Wilkins then intended to make a general assignment, there is no proof whatever that said appellants knew that fact. If the intention existed, it was an undisclosed one, and the creditors were not compelled to believe in an unlawful purpose on the part of their debtor when a lawful intent was just as probable. The above suggestions apply to the appellant Walter H. Dixon. It is true that he was the father of one of the assignors, and that he was an indorser for the firm, but there was no evidence whatever to show that on the 30th day of December, 1895, he had any knowledge of their undisclosed intent to make a general assignment on the next day. His debt, and those the payment of which he assumed, were valid claims against Dixon & Wilkins. The transaction by which said debts were paid or secured was legal, although the firm was insolvent, and, in the absence of all evidence, knowledge of an unlawful intent on the part of the assignors cannot be imputed to him. It is not clear that the members of the firm of Dixon & Wilkins intended to make a general assignment on the 30th day of December, 1895. The witness Baltie H. Dixon, sworn by the plaintiff, testified that the intent to make an assignment was first formed on the 31st of December, and there is no testimony in the case to contradict him, or to show when this intent of the assignors to make a general assignment was formed. But, assuming that from the facts and circumstances shown the trial judge was authorized to find an unlawful intent on the part of the assignors at the time they made the preferential payments or securities to the said appellants, we think there is no evidence to justify the finding that either of such appellants knew of such intent. The payment of $275 to the appellant Byron D. Brown might, perhaps, be held unauthorized, as from the evidence it appears to have included an individual claim of the creditor against one of the

firm of Dixon & Wilkins, were it not for the fact that in the complaint the claim is alleged to be a partnership debt of Wood & Wilkins. The appellant could properly rely upon the admissions and allegations contained in the complaint.

The conclusions above arrived at render it unnecessary to consider the position taken by the appellants that the judgment rendered in the court below, in any view of the case, was unauthorized under doctrines laid down in Bank v. Seligman, 138 N. Y. 435, 34 N. E. 196, and Abegg v. Bishop, 142 N. Y. 286, 36 N. E. 1058, and other authorities; and also the alleged error of the court below in granting an additional allowance against each appellant on the whole amount involved as to all the defendants:

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur, except LANDON, J., dissenting.

LANDON, J. (dissenting). The trial judge found as facts that the four appellants each knew, when they severally received their preferential payments from the insolvent assignors, immediately preceding the general assignment, that the assignors contemplated the making and intended to make such assignment, and that each appellant took the payment to himself with the intent thereby to be preferred to a greater extent than one-third of the assets of the assignors, after making the proper deductions allowed by law, and with the intent to evade the statute, and that each appellant concurred in said illegal intent and purpose. These findings are, I think, justified by the evidence. The questions involved in them are purely matters of fact, and as to them the trial court responded as a jury. The inferences from the entire transaction were for the trial judge to make. The circumstances pointed, not obscurely, to the appellants' collusive knowledge and intent. Not one of the appellants took the stand. We may infer, in support of the judgment, that, if any one of them could have exculpated himself, he would have done so. We are to presume that the trial judge gave due weight to such legal maxims as that fraud must be proved; that, if the evidence points equally to an honest intent as to a dishonest one, the honest one must be preferred, and the like; and that he found the fact as he did because the evidence constrained his judgment that way. It was a natural and, I think, right, finding. In Manning v. Beck, 129 N. Y. 1, 29 N. E. 90, it was found as a fact that the creditor to whom the debtor assigned his property was at all times ignorant of any fraudulent intent on the part of the assignor. There was no finding there, as here, that the assignor made the transfer to his creditor in contemplation of making a general assignment. I advise affirmance.